## EDVIGO SOCK v. MICHAEL SUBA.

[FILED JANUARY 20, 1891.]

**Action Quia Timet: PARTITION: IMPROVEMENTS: ESTOPPEL.** One H. having purchased certain lands on an Indian reservation on which he had made the first payment, wrote to a married sister in Poland stating that if she and her husband would remove onto the land and make their home there he would give it to them. In pursuance of this promise the sister and her husband moved upon the land, built a house thereon, cultivated and improved a considerable portion of the same, and paid the taxes. Prior to the arrival of his sister, H. mysteriously disappeared and was supposed to be dead. Several years after the sister had moved on the land one S., claiming to have furnished one-half the purchase money, instituted proceedings in partition against H., neither the sister nor her husband being made parties, and a decree was entered dividing the land equally. Afterwards the sister brought an action to quiet title. *Held*, That she was entitled to relief, and that a reference would be ordered to take testimony and find the amount of money paid by the plaintiff and defendant and the value of the improvements, and on the coming in of the report the court would order the land divided, less the improvements, according to the amount paid by each; or, if deemed more just and equitable, require the repayment to the defendant of the money advanced with interest thereon.

ERROR to the district court for Nance county. Tried below before POST, J.

*M. V. Moudy*, and *W. F. Critchfield*, for plaintiff in error, cited : *Dawson v. McFaddin*, 22 Neb., 131 ; *Potter v. Smith*, 35 N. W. Rep. [Mich.], 916 ; *Poullain v. Poullain*, 4 S. E. Rep. [Ga.], 92 ; *Hurley v. Cox*, 9 Neb., 232 ; *Uhl v. May*, 5 Id., 160 ; *Filley v. Duncan*, 1 Id., 134 ; Knapp, Partition, 79, 310, 377–8, 381 ; 3 Wait, Actions & Defenses, 149, 176 ; *Russell v. Mandell*, 73 Ill., 140 ; *Rawson v. Fox*, 65 Id., 200.

*Sullivan & Reeder, contra*, cited : Kerr, Fraud & Mistake, 315, 316 ; *Hennessy v. Woolworth*, 128 U. S., 438 ; *Burke v. Ray*, 41 N. W. Rep., 240 ; *Pierson v. Ballard*, 20 Id., 193 ; *Munsell v. Loree*, 21 Mich., 497 ; *Thomas v. Griffith*, 25 N. W. Rep., 900 ; *Edwards v. Fry*, 9 Kan., 417 [26 Am. Dec., 664, and note] ; *Wright v. Wright*, 31 Mich., 380 ; *Appeal of Holthouse*, 12 Atl. Rep., 340 ; *Nippolt v. Kammon*, 40 N. W. Rep., 266 ; Devlin, Deeds, secs. 145, 150 ; *Jervis v. Smith*, 1 Hoffman Ch. [N. Y.], 470 ; *Lord v. Underdunck*, 1 Sandf. Ch. [N. Y.], 46.

MAXWELL, J.

This is an action to quiet title to real estate. The plaintiff alleges in her amended petition that "for that heretofore on the 24th day of August, 1886, the said defendant, wickedly contriving, and with intent to defraud the said plaintiff in the premises, commenced an action in the district court of said Nance county against one Steinlaus Handzyl, and for and in that behalf filed his pretended and fraudulent petition in said court, charging the following matters and things, to-wit: That on the 10th day of March, 1879, the lands hereinafter described belonged to the United States and were a part of the public domain;

that at said time the said Handzyl and said Suba mutually agreed to purchase a quarter section of government land situated in Nance county, Nebraska, each to pay one-half of the purchase price of such land and be joint owners thereof, the said Handzyl agreeing to examine and select the land, and make the purchase; that in pursuance of said agreement, the said Suba advanced to the said Handzyl the sum of seventy-five dollars, which was to be used in making the first payment on the land intended to be purchased; that the said Handzyl, after receiving said money pursuant to the agreement aforesaid, did on the 13th day of March, 1879, with said money, and certain money of his own, purchase of the United States government, for the agreed consideration of $396, the premises situated in Nance county, Nebraska, and described as follows: The southwest quarter of section 30, in township 17, range 3 west, of the 6th principal meridian; that the purchase price of said land was to be paid in three equal installments, and that the said Handzyl at the said time paid the first installment, taking therefor a receipt in his own name from the receiver of the United States land office at Grand Island, Nebraska, and that at least one-half of the said sum of $132 was the money given as aforesaid by the said Suba to the said Handzyl; that afterwards, to-wit, on January, 1880, the said Handzyl and Suba mutually agreed to purchase twenty other acres of government land in said Nance county, each to pay one-half the purchase price, and be joint and equal owners thereof; that in pursuance of said agreement, the said Suba delivered to said Handzyl, for the purpose of paying his share of said installment of the purchase price of the land first above described, and his half of the first installment of the purchase price of said twenty acres, the sum of $130; that said Handzyl, upon the receipt of said sum of $130, purchased with a portion thereof, and for the use and benefit of the said Suba and said Handzyl the following described premises: lots 6 and 7 in the southeast

quarter of said section 30, in the township and range afore-
said; that said twenty-acre tract was to be paid for in three
equal installments, and the said Handzyl, at the time of
said purchase, paid the sum of $16.91, the same being the
first installment, and took therefor the said receiver's re-
ceipt in his own name; that the said Handzyl did not pay
the second installment of the purchase price of the lands
first herein described, nor has the said Handzyl paid any
portion of the second or third installments of the purchase
price of either of said tracts, but a third person, a stranger
and mere volunteer, has made said payments for the said
Handzyl, and the register and receiver of said land office
have issued to the said Handzyl, and in his name, a final
receipt for the payment of the entire purchase price of both
of said tracts, and a patent for all of said lands has been
issued by the president of the United States, conveying the
same in fee simple to the said Handzyl; that the said Suba
has always been, and still is, ready and is willing to pay
his share of the purchase price of said lands according to
his agreement with the said Handzyl, and he now here of-
fers to the court for the said Handzyl's use so much of the
purchase price of said land as the court shall, upon an ac-
counting, find is due from the said Suba; that the said
Suba charges that he is in equity the real owner of said
undivided one-half of said lands, under and by virtue of
his agreement with the said Handzyl, and the payments
made in pursuance thereof as aforesaid, and that the said
Handzyl possesses the legal title to the whole of said lands,
and refuses and neglects to convey an undivided one-half
thereof to the said Suba, and under said petition the said
Suba prayed that he might be adjudged the owner of the
undivided one-half of said lands, and to that extent the
said Handzyl, in this case, be adjudged to hold the legal
title to said lands as trustee for the said Michael Suba, and
that the said Handzyl herein be required to convey the
same to said Suba.

"Second—That on the 11th day of December, 1886, the said Michael Suba, as plaintiff, filed another fraudulent and pretended paper in said court, against the said Handzyl herein, which purports to be a petition, and he fraudulently charges therein the following matters and things, to-wit: that the said Handzyl is the owner in fee of an undivided one-half of the following described real estate to-wit, the southwest quarter of section number 30, and lots numbers 6 and 7 in the southeast quarter of said section number 30, all in township 17, range 3 west, of the 6th principal meridian, in Nance county, Nebraska; that the said Suba is the owner in fee of the remaining one-half of said real estate; that no person other than the said Handzyl and said Suba has or claims any lien upon or interest in said property; that under the allegations in said Suba's petition he prays for judgment confirming the shares of the said Handzyl and Suba as set forth above, and for a partition of the respective rights of the parties aforesaid, or if the said premises cannot be equitably divided, that said premises may be sold and the proceeds thereof be divided between the parties according to their respective rights.

"Third.—That under and by reason of said several pretended and fraudulent papers purporting to be petitions, and which were so filed against the said Handzyl in said court by the said Suba, the said Suba fraudulently procured an order and decree of said district court for a partition of said premises, and that thereafter and pursuant to said order and decree he fraudulently procured three referees to be appointed by said court, in due form of law, to make the partition of said premises, and on the 25th day of April, 1887, the said referees so appointed admeasured and allotted to the said Suba as his portion of said premises, the west half of the southwest quarter, and lot number 7 in the southeast quarter, all situated in township number 17 north, of range number 3 west, of the

6th principal meridian, in Nance county, the same being one-half of the entire premises heretofore described and the said referees at the same time set off, admeasured, and allotted to the said Handzyl in the said premises the east half of the southwest quarter of said section 30 and lot number 6, in said section 30, situated in the town and range aforesaid, as said Handzyl's share in the partition of said premises, and that thereafter the said court rendered a decree, confirming the report of said referees, partitioning said real estate as above set forth according to the report of said referees.

Fourth—The plaintiff herein denies that the said Handzyl and the defendant Suba entered into an agreement to purchase said premises, or any other premises or lands, with the joint funds of the said Handzyl and the said defendant Suba, as alleged in the said Suba's several fraudulent and pretended petitions, or in either of them, and denies that the said Suba advanced or paid any sum of money whatever to the said Handzyl for the purpose, or with the understanding that the said Handzyl should invest the same in the premises aforesaid, or in any other lands for the mutual benefit and use of said parties, as claimed and alleged in said Suba's pretended petitions, filed as aforesaid in said court, and the plaintiff herein denies that at the time the said Handzyl purchased said lands of the United States, that he was indebted to the said Suba for money or other valuable things had or received by him from the said Suba, and the plaintiff herein denies each and every allegation contained in said Suba's pretended petitions and in each of them, not herein expressly admitted, except that the said Handzyl entered and purchased said lands of the United States at or about the times alleged in said pretended petition of Suba's.

"Fifth—The plaintiff herein avers that the said Handzyl purchased and paid for all of said lands with his own individual funds in the first instance, which includes the

first payment made to the United States at the times of entering the same, amounting to the sum of $132 paid on the southwest quarter of said section 30, and the sum of $18.33 paid on said lots 6 and 7, above described, and'that the allegations in said Suba's petitions, and in each of them, concerning the payment of money by said defendant to said Handzyl for the purpose of buying lands on the mutual account of the said Suba and the said Handzyl, are false and fraudulent, which the said Suba well knew at the time he made the same, and the same were made with the intent and for the purpose of defrauding the plaintiff herein.

"Sixth—The plaintiff herein, Edvigo Sock, avers that she is the sister of the said Steinlaus Handzyl, and that at the time the said Handzyl purchased the lands above described, she was a resident of Austria-Poland, in Europe, and was then living with her husband, Martin Sock, and that at the written request of the said Handzyl she, together with her said husband, came to this country in the winter of 1881, and at a like request of the said Handzyl the plaintiff and her said husband entered upon and took possession of the lands hereinbefore described with the express understanding and agreement with the said Handzyl that if she, the plaintiff, would go upon the said lands, improve the same, and make a permanent home thereon, and would pay the second and third installments of the purchase money, due to the United States as part of the purchase price of said lands, and pay the taxes levied against the same, that she should then become the owner of said lands and should have the title to the same in fee simple, discharged of all claim, title, and interest whatsoever of the said Handzyl or any other person in and to said lands; that pursuant to said understanding and agreement with said Handzyl, plaintiff, together with her husband and family, entered upon said lands in the early part of the year 1881, and at once commenced making valuable improvements thereon

with a view of making a home for herself and family as aforesaid; that during the year 1881 the plaintiff erected upon the said premises a dwelling house of the value of $175, and together with her family moved into the same, and has since occupied it as her residence and cultivated said premises, and has been in open, notorious, continuous, and exclusive possession of all of said described lands since the winter of 1881, during all of which time the said Suba has had full notice and personal knowledge of plaintiff's occupancy, improvement, and possession of said premises.

"Seventh—That plaintiff avers that during the time she has been in possession of and occupying said premises as aforesaid she has caused to be broken out at her own expense about fifty-seven acres of wild prairie land on said premises at cost of about $142.50, and that she has paid all taxes assessed against said lands for the years since the said lands were purchased from the United States aforesaid, amounting to some $60, and that pursuant to the agreement entered into with the said Handzyl, and in fulfillment of the same on her part, she has paid, as second and third installments of the purchase money due to the United States on said lands, the sum of about $390, and has in all things fulfilled and performed the agreement on her part made with the said Handzyl as aforesaid.

"Eighth—The plaintiff avers that the part of said premises set off and allotted to Suba in said partition proceedings contains thirty acres of the breaking and land under cultivation, which was made and was paid for by plaintiff at a cost of $75 prior to the partitioning of the same as aforesaid.

"Ninth—The plaintiff further avers that she was never summoned or notified of the action and proceedings of the said Suba in this court for the partition of said lands, and that she was not made a party to said suit, and was never notified of the filing and pendency of said pretended peti-

tions; at the same time the said Suba was personally well acquainted with the said plaintiff Sock, and knew of the right, title, interest, and possession of the said Sock in said premises prior to the commencement of said partition proceedings in this court, but that he never has claimed at any time prior to commencing said partition proceedings to have any interest, right, or title in or to any portion of said lands.

"Tenth—That no personal service was had upon the said Handyzl in the suit commenced by the said Suba aforesaid for the partition of said real estate, but that service was had therein constructively, by publication of notice in the *Nance County Journal*, a newspaper printed and published in said Nance county, of which notice the said Handyzl had no knowledge.

"Eleventh—That the partitioning of said premises aforesaid, and the decree and orders made in said partition proceedings by this court, cast a cloud upon the title of plaintiff in and to said lands.

"Wherefore," etc.

The facts set forth in the petition are fully sustained by the evidence except upon two points, viz., the furnishing of certain money by Suba to Handzyl, which, it is claimed, was to purchase land from the United States. It is pretty well established that Suba furnished to Handzyl about the sum of $200 near the time that the land in question was purchased. It is claimed on behalf of the defendant that this money was furnished to Handzyl in pursuance of an express agreement that he should own one-half of the land. Other proof, however, tends to show that the money was a loan, and that Suba afterwards claimed that he did not want the land, that he wanted his money. He seems to have made no claim for the land when the plaintiff and her husband moved upon it, nor at any time before bringing the action in partition. He was well aware that the plaintiff had erected a house on the premises, had broken

up and was cultivating a considerable portion of the land, and were in possession at the time he instituted his action, yet neither of them were made parties in that case. The decree of partition therefore is void, and of no effect as to them.

Shortly before the plaintiff came to this country Handzyl went away—there being a mystery about the cause—and he is supposed to be dead. No person knowing the actual facts, therefore, could controvert the claims put forth by the defendant, and were it not for an express receipt of $130 there would be considerable doubt as to his furnishing the money alleged.

The plaintiff, however, in pursuance of the alleged promise on the part of her brother, moved upon the land, and has made all payments due thereon, including the taxes, while the defendant stood by and saw all this being done without making a claim to any interest in the property. In this he was not acting in good faith. The plaintiff, therefore, is clearly entitled to relief.

The proof fails to show the present value of the property, and, in view of the conclusion which we have reached, it will be necessary to order a reference to ascertain the amount of money paid by the defendant for the purchase of said land, the amount paid by the plaintiff thereon, together with taxes, and the value of the improvements to the time of instituting the proceedings in this case; the amount due the defendant, including interest at seven per cent to the first day of this term of court; and on the coming in of the report a judgment will be rendered apportioning the land according to the sums paid by each or awarding the defendant such sum of money as may be deemed just and equitable in the premises.

The judgment of the district court is reversed and a judgment will be entered as provided in this opinion.

JUDGMENT ACCORDINGLY.

THE other judges concur.