50  283
57  216

CAMPBELL PRINTING PRESS & MANUFACTURING COMPANY, APPELLEE, V. MARDER, LUSE & COMPANY, APPELLANT, ET AL.

FILED JANUARY 7, 1897.   No. 6937.

1. Summons: IMPEACHMENT OF RETURN.   In this state it is the settled law that extrinsic evidence is admissible to impeach the return of an officer as to service of process.

2. Judgment: SERVICE OF SUMMONS.   Where there is an attempt at service reaching the defendant, but there is a defect in the manner of service or form of the return, this is a mere irregularity, and a judgment founded on such service is not open to collateral attack. But where the attempted service does not reach the defendant at all, a judgment founded thereon is absolutely void.

3. Corporations: SERVICE OF SUMMONS.   Where attempt is made to serve a summons upon a corporation, and the persons served are not at the time officers of, or connected with, the corporation, the case is one of total absence of service, and a judgment founded thereon is void.

4. Judgments: ENFORCEMENT: AVOIDANCE.   The rule whereby a party seeking affirmative aid of a court of equity to relieve him against a void judgment is required to disclose a meritorious defense to the cause of action does not apply in a case where the plaintiff is himself seeking affirmatively to enforce such judgment.

5. Corporations: CREDITORS: ENFORCEMENT OF CLAIMS.   One corporation having acquired all the stock of another, and then, through its officers, having procured that other to execute to it a bill of sale of all its assets to secure an existing indebtedness, and there remaining as a consequence of such acts no officers or place of business or tangible assets of such second corporation, semble, that another creditor of the second corporation need not procure judgment against it   preliminary to an action against the first for the purpose of enforcing its claim against the second.

APPEAL from the district court of Douglas county. Heard below before FERGUSON, J.   Reversed.

The facts are stated by the commissioner.

*Connell & Ives,* for appellant:

A judgment may be impeached on the ground of a lack of jurisdiction over the defendant by any one whose interests are adversely affected thereby, be he stranger or party defendant to the suit. (*Atkins v. Atkins,* 9 Neb., 191; *Frazier v. Miles,* 10 Neb., 113; *Murphy v. Lyons,* 19 Neb., 691; *Holliday v. Brown,* 33 Neb., 657; *Wilson v. Shipman,* 34 Neb., 573.)

To gain jurisdiction over a corporation the initial process must be served upon the identical persons and in the exact manner prescribed by the statute. (*Fee v. Big Sand Iron Co.,* 13 O. St., 563; *Miller v. Norfolk & W. R. Co.,* 41 Fed. Rep., 431; *St. Louis, V. & T. H. R. Co. v. Dawson,* 3 Ill. App., 120; *Great Western M. Co. v. Woodmas of A. M. Co.,* 12 Colo., 47; *Chambers v. King W. I. Bridge Mfg. Co.,* 16 Kan., 270; *O'Brien v. Shaw's Flat & T. C. Co.,* 10 Cal., 343.)

*Breckenridge & Breckenridge* and *L. F. Crofoot, contra:*

There was service of valid process by which the court acquired jurisdiction. (Van Fleet, Collateral Attack, secs. 61, 62, 526; Black, Judgments, sec. 287; Freeman, Judgments [4th ed.], 130; *Gandy v. Jolly,* 35 Neb., 711; *Schneitman v. Noble,* 75 Ia., 120; *Rotch v. Humboldt College,* 56 N. W. Rep. [Ia.], 658.)

Defective service of process does not render void a judgment based thereon. (*Isaacs v. Price,* 2 Dillon [U. S.], 351; *Hendrick v. Whittemore,* 105 Mass., 27; *Dutton v. Hobson,* 7 Kan., 196; *Campbell v. Hays,* 41 Miss., 561; *Christian v. O'Neal,* 46 Miss., 669; *Cole v. Butler,* 43 Me., 401; *Fahs v. Taylor,* 10 O., 105; *Ballinger v. Tarbell,* 16 Ia., 492; *Webster v. Daniel,* 47 Ark., 131; *Righter v. Thornton,* 30 W. L. Bull [Pa.], 32; *Jackson v. State,* 104 Ind., 516; *Essig v. Lower,* 120 Ind., 239; *Leonard v. Sparks,* 22 S. W. Rep. [Mo.], 899; *Janes v. Howell,* 37 Neb., 320; *Schoeder v. Wilcox,* 39 Neb., 136.)

Appellant, who is a stranger to the record of the judg-

ments, cannot attack them collaterally. (*Wilcher v. Robertson*, 78 Va., 602; *Vose v. Morton*, 4 Cush. [Mass.], 27; *Eureka Iron & Steel Works v. Bresnahan*, 66 Mich., 489; *Gilmore v. Ham*, 10 N. Y. Supp., 48; *Martin v. Bowie*, 37 S. Car., 102; *Connelly v. Edgerton*, 22 Neb., 82.)

IRVINE, C.

The Campbell Printing Press & Manufacturing Company, a New York corporation, brought this action against Marder, Luse & Co, which seems to be an Illinois corporation, and the Omaha Type Foundry, a Nebraska corporation, alleging in its petition the recovery by the plaintiff against the Omaha Type Foundry of four judgments before a justice of the peace, and one in the county court of Douglas county; and that executions issued on these judgments had been returned unsatisfied; that such judgments were upon promissory notes made by strangers to the type foundry and by it indorsed to the plaintiff; that at the time of the indorsement of said notes the type foundry had in its possession and was the owner of a large amount of property; that Marder, Luse & Co. was then the owner of a large portion of the capital stock of the type foundry, and thereafter became the owner of the rest of the stock, and thereupon took possession and appropriated to its own use all the property of the type foundry. The prayer was for a disclosure of the property of the type foundry and that it be applied to the payment of plaintiff's judgments and for judgment against Marder, Luse & Co. Marder, Luse & Co. answered denying the material averments of the petition and alleging that the type foundry, in February, 1891, became unable to continue its business because of inability to pay debts, and sold its property to Marder, Luse & Co., the latter paying full consideration therefor. The court found for the plaintiff, taking the view that the plaintiff was entitled to share *pro rata* with other creditors in the property of the type foundry, and rendered judgment against Marder, Luse & Co. for that proportion of its judgments

corresponding to the ratio which the value of the property bore to the total indebtedness of the company. From this decree Marder, Luse & Co. appeals.

The evidence, without contradiction, discloses that prior to December, 1890, the type foundry was doing business in Omaha with a capital stock of $25,000, $23,000 of which was owned by Marder, Luse & Co., $1,000 by Mr. Pickering, and $1,000 by H. P. Hallock. Mr. Hallock was vice president of the company, Mr. Marder, of Marder, Luse & Co., being its president. In December, 1890, Marder, Luse & Co. purchased the stock of Messrs. Pickering and Hallock, and thus became the sole owner of the stock of the type foundry. Mr. Dresser appeared then as the agent of Marder, Luse & Co. and took possession of the property of the type foundry. It appears quite clearly that he held no official position in the type foundry corporation and exercised no authority derived therefrom. The type foundry had about this time executed a bill of sale to Marder, Luse & Co. of all its property in payment of an indebtedness previously incurred. This bill of sale was authorized at a meeting of the stockholders of the type foundry, the minutes disclosing that Mr. Marder was alone present representing all the stock. From that time, to-wit, early in February, 1891, the property was in the possession of Dresser as agent for Marder, Luse & Co. under the bill of sale. The judgments were all rendered in actions begun in 1892, long after the transactions referred to. To their introduction in evidence the defendant objected, on the ground of want of jurisdiction appearing on the face of the record, and also by extrinsic evidence. The court received the judgments and found in the decree that they were valid. We think they were shown beyond dispute to be void. It is unnecessary to consider some of the questions argued as to the validity of service upon certain officers of the corporation. Where the returns show by name the person upon whom service was made, it appears in each case to be Mr. Hallock or Mr. Dresser. At the time of service Mr. Hallock had no

connection whatever with the corporation, and Mr. Dresser never had any connection therewith. One record discloses service by leaving a copy at the usual place of business of the corporation. But the action was before a justice of the peace. The general provision of the Code of Civil Procedure is (sec. 73), that a summons against a corporation may be served upon certain officers named, "or if none of the aforesaid officers can be found, by a copy left at the office or last usual place of business of such corporation." But section 912 of the Code is a special provision relating to service upon corporations in actions before justices of the peace, and such special provision prevails as against the general provision of section 73. By section 912 it is provided that a summons may be served upon certain officers, "or if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation with the person having charge thereof." Now, at the time this summons was served, the type foundry had no usual place of business, and no person was in charge thereof. The section governing the case differs from section 73 in requiring service at the usual place of business instead of last usual place of business, and in requiring a copy to be left with the person having charge thereof. While it was held in *Johnson v. Jones*, 2 Neb., 126, that the return of an officer cannot be impeached collaterally, it has since been several times distinctly held to the contrary. (*Holliday v. Brown*, 33 Neb., 657, 34 Neb., 232; *Wilson v. Shipman*, 34 Neb., 573.) In many other cases the court, by considering the sufficiency of evidence to impeach the return, has impliedly held to the same effect, and it now must be accepted as the established law of this state that extrinsic evidence is admissible in a collateral proceeding for the purpose of impeaching an officer's return. We call attention to this rule for the purpose of showing the inapplicability of certain authorities from states holding otherwise, which authorities are relied on by the appellee.

The appellee contends, however, that although it be

found that the service was defective, the judgments are not void, and not open to collateral attack. In support of this argument reliance is placed largely on *Gandy v. Jolly*, 35 Neb., 711. In that case the defect was that the service had been by reading the summons instead of delivering a copy. This was a mere irregularity in the manner of service and the court properly held that it did not rendered the judgment void. A paragraph from Black on Judgments, was, however, cited with approval in the opinion, distinguishing between such irregularities in the manner of service and a total want of service which renders the judgment void, and as illustrations of cases where there is a total want of service there is mentioned service by delivering a copy to a third person not a resident of the house of defendant's abode, and service upon a stranger, although he is the authorized agent of the defendant. The distinction is in fact clear. If an attempt at service is made, and actually reaches the defendant, although it be not made or returned in the form and manner required by law, there is presented a case where jurisdiction attaches so far as to render a judgment good against collateral attack. But where the attempted service does not reach the defendant at all there is no service and the proceedings are void. We consider this a case of the latter class. Service was not made upon any person having any connection whatever with the corporation. Indeed, at the time the suit was begun, the corporation was practically extinct. It had no officers, no place of business, and a solitary stockholder which was itself a corporation of a distant state. We therefore think the court erred in finding the judgments valid. Attention is called to *James v. Howell*, 37 Neb., 320. But that case is not applicable. It belongs to that class in which the court has frequently held that one seeking the affirmative relief of a court of equity against a void judgment must disclose that he has a meritorious defense to the cause of action on which the judgment was based. These cases are not applicable to cases like the present, where the party claiming under

the judgment is seeking affirmatively to enforce it. This he cannot do if the judgment is void.

The plaintiff, both in its petition and in its evidence, rested its case entirely on the judgments. While the pleading of the judgments was perhaps an implied pleading of an indebtedness, there was in the evidence no proof of an indebtedness to the plaintiff outside of the records of the void judgments. Therefore, the plaintiff failing to establish its judgments, failed entirely to establish its relationship as creditor of the type foundry. We mention this particularly for the purpose of guarding against any inference that the plaintiff is entitled to no relief if it be in fact a creditor. The bill of sale to Marder, Luse & Co. was clearly void as against other creditors. It has been held that a corporation may not prefer a debt owing to its own directors, or a debt for which such directors are sureties. (*Ingwersen v. Edgecombe*, 42 Neb., 740; *Tillson v. Downing*, 45 Neb., 549.) The principle which governs these cases applies to such a case as this, where, if we concede that one corporation may become the owner of all the stock of another, the officers of the former, acting in its behalf and also on behalf of the latter, prefer a debt from the latter to the former, especially when such preference absorbs all the assets of the debtor corporation. It may be that the situation at the time was such that the plaintiff could not maintain any action against the type foundry because of the disappearance of its whole organization and of all its assets through the wrongful act of the defendant. If so, it is very probable that this action might be maintained against Marder, Luse & Co. without its being sustained by judgments against the type foundry. As the record does not, at this time, present these questions, they are not decided. We merely desire to clearly indicate that they are not here being determined adversely to the plaintiff. Under the circumstances, we think the proper course is to remand the action to the district court for a new trial.

REVERSED AND REMANDED.