John P. Hier *et al.*

*v.*

Abraham Kaufman *et al.*

*Filed at Ottawa October 31, 1890.*

1. Partnership—*powers of individual partners—to act in the name of the firm—giving notes—warrant of attorney to confess judgment, etc. —ratification—presumption.* One partner may sign the firm name to a note given in the ordinary course of business for a firm debt.

2. But one partner can not execute a warrant of attorney to confess a judgment in the firm name, without express authority from the other partner, or the ratification of the act by the latter.

3. Where judgment notes, however, are signed in the firm name by one partner, alone, but with the assent of the other partner, he making no objection thereto, the authority to sign the firm name, or the ratification of the act, must be presumed.

4. Insolvent debtors —*giving judgment notes or other security to creditor—whether within the act.* The statute relating to voluntary assignments by insolvent debtors does not prohibit such a debtor from giving his creditor a judgment note or other security, unless it is made

Brief for the Appellants.

after he has made up his mind to assign, and with a view thereby to give a preference, in fraud of the act. If the debtor has no intention of ceasing business when he gives a judgment note or other security, and expects to continue his business, such security will be valid and binding.

5.   Judgment by confession—*equitable jurisdiction in courts of law— opening judgment and letting in defense.* Courts of law exercise an equitable jurisdiction over judgments by confession, so that where there is a want of service, or an absence of authority to confess, the debtor will not be driven into a court of chancery, but may move to set aside the judgment in the court of law. A court of law may open the judgment and allow the debtor to make his defense, leaving the judgment to stand as security.

6.   The assignee of an insolvent debtor takes the property assigned subject to all valid pre-existing liens; and where such property is subject to the lien of an execution issued upon a judgment entered by confession under a warrant of attorney, and such judgment is opened to let the defendant interpose a defense, the county court should wait until the defense is heard and decided, before determining upon the lien of such an execution. If the defense is successful, the lien falls; otherwise it must be enforced.

7.   Chancery—*relief against judgment—not for defect or want of service.* A court of equity will not set aside a judgment of a court of law for an alleged want of service of process, unless the judgment is shown to be unjust and inequitable. This rule applies also to judgments by confession under warrants of attorney.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. Richard Prendergast, Judge, presiding.

Messrs. Page, Eliel & Rosenthal, for the appellants.

Messrs. Kraus, Mayer & Stein, also for the appellants:

A partner has not the power to bind his firm by a confession of judgment. *Girard* v. *Basse,* 1 Doll. 119; *Sloo* v. *Bank,* 1 Scam. 428; *Barlow* v. *Reno,* 1 Blackf. 252; *Grafebrooke* v. *McCreedie,* 9 Wend. 437; *Crane* v. *French,* 1 id. 311; *York's Appeal,* 36 Pa. St. 458; *Bitzer* v. *Shunk,* 1 W. & S. 340; *Shed* v. *Bank,* 32 Vt. 709; *Christie* v. *Shennan,* 10 Iowa, 535; *Edwards* v. *Pitzer,* 12 id. 607; *North* v. *Mudge,* 13 id. 496.

Whether the signing partner disappears or not, his co-partners may sell the entire stock of the firm to pay its debts in good faith, and they may either divide the proceeds of the same *pro rata* among all their creditors, or they may exclude the payee in the note from any share in the distribution of them. *Schneider* v. *Sanson,* 62 Texas, 201; *Graser* y. *Shellwagen,* 25 N. Y. 315; *Lamb* v. *Durant,* 12 Mass. 54; *Arnold* v. *Brown,* 24 Pick. 89; *Cayton* v. *Hardy,* 27 Mo. 536; *Halstead* v. *Shepard,* 23 Ala. 558; *Williams* v. *Barnett,* 10 Kan. 455.

Appellees received an unlawful preference. *Bank* v. *Rehm,* 126 Ill. 461; *Hanford Oil Co.* v. *Bank,* id. 584; *Field* v. *Geohegan,* 125 id. 68.

Messrs. QUIGG & BENTLEY, for the appellees:

The validity of the judgment of November 27, 1888, in favor of the appellants and against the insolvents can not be questioned in this proceeding. This proposition holds good even if the validity of said judgment is to be determined upon the facts appearing in this record.

The ancient rule, that one partner can not bind another by confessing judgment in the firm name, is not supported by reason, and should not be recognized. *Truett* v. *Wainwright,* 4 Gilm. 411.

A judgment confessed by one partner in the name of the firm should be upheld as a lien on the partnership assets, at least. *Grier* v. *Hood,* 25 Pa. St. 430.

The evidence preserved in this record shows that Sues had authority from his partner to confess judgment in the firm name. *Brutton* v. *Burton,* 1 Chitty, 707.

But the validity of the judgment of November 27, 1888, can be determined only by the record of that judgment,—not by the record of this appeal; and by the former record its validity is unquestionable. *Searle* v. *Galbraith,* 73 Ill. 269; *Bush* v. *Hanson,* 70 id. 480; *Iglehart* v. *Chicago, etc. Co.* 35

id. 514; *Swearengen* v. *Gulick,* 67 id. 208; *Anderson* v. *Field,* 6 Bradw. 307; *Jackson* v. *Tift,* 15 Ga. 557.

The proceedings taken by Uhlendorf since the judgment of November 27, 1888, was entered, have given it validity if it was not valid originally. *Lyon* v. *Boilvin,* 2 Gilm. 629; *Pierson* v. *Holman,* 5 Blackf. 482.

The validity of the judgment of November 27, 1888, being unimpeachable in this proceeding, the order of the county court here appealed from is erroneous.

The claim that said judgment was entered on notes which had been delivered *in escrow,* only, and the further claim that said judgment, and the execution issued thereon, were preferential, and void under the Voluntary Assignment act of Illinois, are shown to be false.

The preferential act was the giving of the notes. *Field* v. *Geohegan,* 125 Ill. 68; *Hanford Oil Co.* v. *Bank,* 126 id. 584.

An assignment was not contemplated by the insolvents until after the notes were given, nor until after the judgment of November 27 had been entered on said notes.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On November 27, 1888, Sues & Uhlendorf, a firm, composed of Henry Sues and Lebrecht Uhlendorf, and engaged in the wholesale and retail tobacco and cigar business in the city of Chicago, confessed judgment for $16,217.70 in the Superior Court of Cook County, in favor of Kaufman Bros. & Co., a firm composed of Abraham Kaufman, Herman Kaufman and David Lachenbruch, and engaged in business in New York City as manufacturers of and wholesale dealers in cigars. Execution was at once issued upon the judgment and levied upon all the tangible personal property of the debtors. On the same day, but later in the day, Sues & Uhlendorf executed and filed in the County Court of Cook County an assignment for the benefit of creditors to one Otto C. Schneider. The

assignee found the Sheriff in the possession of the property. On November 28, 1888, the County Court entered an order, decreeing that the assignee take possession "subject in all respects to the lien of the said execution," and directing that the Sheriff turn over to the assignee all the property so levied upon "subject to the lien of such execution and the right of said judgment creditors, * * * leaving to be determined in this (County) court the question of the validity of such lien upon and to the said property * * * and the proceeds thereof." In pursuance of such order the property was accordingly turned over by the Sheriff to the assignee.

On January 30, 1889, the appellant, Hier, filed a petition in said county court, setting up, among other things, that Sues & Uhlendorf had become indebted to him for the purchase of goods, that he had brought suit in said Superior Court and obtained judgment on January 9, 1889, for $1279.50, and issued an execution thereon, and delivered the same to the Sheriff, and that such execution was a lien upon the personal property of Sues & Uhlendorf. The petition prayed, among other things, that the judgment of the appellees, Kaufman Bros. & Co., be set aside as fraudulent, preferential and void. Answers were filed by Kaufman Bros. & Co. and by Schneider, the assignee. Replications were filed to the answers. The petition was thus treated as a bill in chancery, and the issues formed upon it were disposed of by the county court, as though the proceeding was a regular chancery cause. Evidence was heard in open court, and on March 11, 1889, the County court entered an order, finding that the judgment of the appellees and the execution issued thereon were void as preferences under the Assignment Act of this State, and decreeing said execution to be void as a lien on said property and as a preference in the distribution of the assets of the assignors, and denying to the same any right of priority in such distribution.

The present appellees, who were defendants in the county court proceeding, took an appeal to the Appellate Court, and

the latter Court, on January 22, 1890, reversed the order of the county court, and remanded the cause with directions that an order be entered, "allowing the execution of Kaufman Bros. & Co. priority out of the proceeds of the goods levied on," and that said Kaufman Bros. & Co. should recover their costs from the assignee. From such judgment of the Appellate Court reversing the order of the county court, the present appeal is prosecuted.

The judgment by confession for $16,217.70 was entered upon two judgment notes, one for $2500.00 and the other for $13,717.70, both dated November 15, 1888, and executed on that day, both payable on demand after date to the order of Kaufman Bros. & Co., and both having the signature thereto of the firm of Sues & Uhlendorf. It is not disputed that these notes were given for a good and valid consideration. They represented money borrowed of the appellees by Sues & Uhlendorf and goods sold by the former to the latter. Even Uhlendorf, who made a motion on November 28, 1888, to set aside the judgment by confession, says in his affidavit filed in the Superior Court in support of that motion, "that the indebtedness provided for in said note (notes) is a valid one." Nor is it denied, so far as we have been able to discover, that the indebtedness represented by the notes was the firm indebtedness of Sues & Uhlendorf, and not the individual indebtedness of either member of the firm. It is to be noted, that the warrant of attorney to confess judgment is a part of each one of the notes; that is to say, there is not one signature of the firm to the note for $2500.00 and another signature to the warrant of attorney to confess judgment on that note; one signature follows the warrant of attorney and was intended to apply to both the note and the warrant. The same is true of the note for $13,717.70. If, as is claimed by the appellants, Sues alone signed the firm name, and if he had no power to sign the firm name to the warrant of attorney to confess judgment, he certainly had the power to sign the note. He was

the financial and managing partner while Uhlendorf was the travelling partner, absent most of the time soliciting business. One partner may sign the firm name to a note given in the ordinary course of business for a firm debt.

With these preliminary explanations we proceed to consider the main ground upon which the county court held the notes and judgment and the execution and levy thereunder to constitute a fraudulent preference. The view of that court was, that the notes were executed and delivered after Sues & Uhlendorf had made up their minds to make an assignment and had entered upon that determination. In *Field et al.* v. *Geohegan et al.* 125 Ill, 68, it appeared from the evidence, that the debtor firm, more than thirty days before making a general assignment for creditors, gave to certain creditors notes with warrants of attorney for the confession of judgments thereon, that the judgments, however, were not entered until the day of the assignment, that executions were placed in the officer's hands just before the execution and recording of the assignment, but no question was made as to the validity and sufficiency of the judgment notes, and the debtors, at the time of giving such notes, were not contemplating making an assignment; and, under this state of facts, it was *held*, that the lien of the executions issued upon the judgments was prior to that of the assignee or the other general creditors.

The doctrine of the *Geohegan* case is applicable to the case at bar, and the main question involved is the question of fact, whether or not Sues & Uhlendorf contemplated making an assignment at the time when they executed and delivered to appellees the notes upon which the judgments were entered.

As has already been stated, the judgment notes were executed on November 15, 1888, and, assuming for the present that they were delivered to the appellees on that day, we cannot construe the evidence as showing that any assignment was determined upon before November 27, 1888, the day on which the judgment was entered up. To this effect is the testimony

of Lachenbruch, one of the creditors, of Furthman, the attorney, and of both the debtors, Uhlendorf and Sues.   It is true that in his testimony upon the final hearing, Sues seeks to convey a contrary impression, but, in an earlier examination upon the original citation, he swore as follows: "Mr. Sues, at the time of the giving of either of these judgment notes and the signing of them had you and your partner had any conference on the subject of making an assignment?   No Sir. Had you, at either time, concluded to make an assignment? No Sir.   Was the matter of an assignment discussed at all until after the 25th of November?   It was discussed on the day of their entering up the judgment.   That was the first time an assignment was discussed."   In another portion of the record we find the following testimony given by Sues at another time: "When these notes were executed on the 15th of November, Mr. Sues, was it your intention to make an assignment?   At that time, the 15th of November, No Sir. You didn't think of making an assignment until the morning of the 27th Nov. did you?   A. It is hard to say about that. * * * I suppose it had been in my head *for three days previous to that.*   The last coming of Mr. Lachenbruch was the thing that probably put it in my head more than anything else."   Many circumstances tend to confirm this testimony. The firm continued to do business after November 15 and up to November 27, borrowing $2100.00 on November 21, and trying to borrow $700.00 of the appellees as late as November 26.

It is sought, however, to break the force of the testimony that no assignment was resolved upon until November 27 by claiming that the notes, though executed on the 15th of November, were placed in escrow in the hands of Furthman on that day, and were not actually delivered to the appellees until the 27th.   If this were true, the proof shows that, even on the 27th, the assignment was not finally determined upon until Lachenbruch had received the notes from Furthman on the

morning of that day, and had employed another attorney, and entered up judgment; but the claim so made is not sustained by the evidence.

Lachenbruch and Furthman both swear positively that there was an absolute delivery of the notes to the appellees on November 15, and that there was no arrangement under which Furthman was to hold them in *escrow* subject to the order of Sues & Uhlendorf. On that day, a meeting was held between the parties at the Leland Hotel in Chicago. When the notes were signed by Sues, they were handed to Lachenbruch, as the representative of the appellees, and Lachenbruch handed them to Furthman, as the attorney of the appellees, to hold subject to instructions from Kaufman Bros. & Co. The same contradictions exist in the testimony of Sues in regard to this matter, as in regard to the subject of making the assignment. Katz, who was an agent of the appellees as well as of other creditors of Sues & Uhlendorf, merely states what Sues told him after the execution of the notes. In October, judgment notes had been executed by Sues & Uhlendorf to appellees to secure this same indebtedness, and the October notes were taken up on November 15 and the two notes of that date were substituted for the old notes. The very object, which Lachenbruch had in view in coming to Chicago on November 15, was to better the securities of his firm, because the October notes were not demand notes and had been deposited in *escrow* subject to the orders of Sues & Uhlendorf. New notes were taken for the express purpose of doing away with those features of the old notes which rendered them less valuable as securities.

We have made a careful examination of the evidence in view of the earnest contention of counsel, and have reached the conclusion that the notes were executed and delivered to the appellees before the makers had made up their minds, or entered upon any determination, to make an assignment. In the *Geohegan* case, *supra*, the judgments were entered, as here, on the same day on which the assignment was made, and the

executions were issued and delivered to the sheriff only a short time before the assignment was executed and filed for record. As it was said there, so may it be said here: "the Act does not interfere with the action of the debtor while he retains the dominion of his property. He may in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it by operation of law—as, by confessing a judgment in favor of a *bona fide* creditor. * * * But the debtors had nothing to do with the entry of judgments. They did not dictate or determine the time when judgments should be entered. * * * A creditor always has a right to take every precaution to save or secure his debt, and the fact that he delays until the debtor may be on the eve of bankruptcy, is no argument against the good faith of his acts."

But it was set up in the petition of appellant Hier, as filed in the county court, and it is here urged with great force, that the judgment of appellees cannot be regarded as a valid lien upon the property levied upon for the alleged reason that Sues alone, without any authority from Uhlendorf, signed the firm name of Sues & Uhlendorf to the powers of attorney to confess judgments upon the notes. It is admitted that the judgment is valid as against Sues, but it is claimed that it is void as against Uhlendorf, and, therefore, can only be a lien upon the individual interest of Sues in the firm property levied upon, which interest, after the payment of the firm debts, will amount to nothing.

In *Sloo* v. *State Bank of Illinois*, 1 Scam. 428, this Court decided that one partner cannot execute a warrant of attorney to confess a judgment in the name of the firm without express authority from the other partner, or a ratification of the act by the latter. (See also *Martin* v. *Judd*, 60 Ill. 78.)

It is to be noted that the judgment by confession in this case was not entered before the clerk in vacation, but in open court in term time, and the record of the judgment recites that the defendants Henry Sues and Lebrecht Uhlendorf appeared

by their attorney, etc., and that the execution of the warrant of attorney was "duly proven."

It is also to be noted, that the judgment notes given in October were signed by Sues alone in the firm name with the assent of Uhlendorf, and that Lachenbruch was a witness of such act on the part of Sues performed in the presence of Uhlendorf and without objection from the latter. If the decision of this matter depended upon the question of fact whether Sues had authority from his partner to sign the firm name to the warrant of attorney, there are many circumstances from which such authority might be reasonably implied. Upon other grounds, however, the objection here made to the judgment cannot be held to be tenable.

If the county court had any power to set aside the judgment because the court of law which rendered it had no jurisdiction over the person of one of the judgment debtors for the want of service of process upon him, such power must be regarded as resting upon; and having its basis in, some sort of equitable jurisdiction supposed to be vested in the county court by the Assignment Act. This court has decided in *Colson* v. *Leitch*, 110 Ill. 504, that "a court of equity will not enjoin a judgment at law where there has been no service, unless it is alleged and proved that, if the relief be granted, a different result will be obtained than that already adjudged by the void judgment." Such relief will not be granted, if it appears, as it does appear in the case at bar, that the debtor owes the amount of the judgment, and has no defense, either legal or equitable, to the debt for which the judgment is rendered. The same doctrine is announced by Freeman in his work on Judgments (sec. 498) where it is said: "the better established rule undoubtedly is, that notwithstanding an alleged want of service of process, a court of equity will not interfere to set aside a judgment until it appears that the result will be other or different from that already reached."

15—134 ILL.

This principle applies not only where the application to set aside the judgment is made by the debtor, who claims that he was not served with process, or gave no authority to confess judgment, but also where such application is made by a creditor or other third person. (*Martin* v. *Judd*, 60 Ill. 78.)

But, as we read the record, the county court, in the present case, set aside the judgment solely upon the ground that it operated as an unlawful preference in contravention of the assignment act; that court did not assume to pass upon the validity of the judgment as affected by the alleged want of authority of Sues to sign the firm name to the warrant of attorney. On the contrary, its final decree treats the judgment as valid and subsisting. That decree is interpreted by counsel for appellants in the following language made use of in their supplemental brief: "the court denied defendants' alleged right of priority in the distribution of the assets, * * * but allowed the judgment to stand in proof of appellees' claim and to share in the distribution of the estate *pro rata* with other legally proven claims."

The judgment by confession against Sues & Uhlendorf was rendered by the Superior Court of Cook County and an execution from that court was levied upon the property before the appointment of an assignee. We have held, in a number of cases, that a court of law exercises an equitable jurisdiction over a judgment by confession; that, where there is a want of service, or an absence of authority to confess, the debtor will not be driven into a court of chancery, but may move to set aside the judgment before the court of law which rendered it; that such court of law may open the judgment and permit the debtor to present his defense to the claim if he has any, but will at the same time protect the creditor by permitting the judgment to stand as security; in such cases, the proceedings on the judgment are merely stayed; the enforcement of the plaintiff's lien is suspended, but the lien is fully preserved; if the defense is successful, the judgment falls; if otherwise,

the judgment is to be enforced.  (*Lyon* v. *Boilvin,* 2 Gilm. 629; *Lake* v. *Cook,* 15 Ill. 353; *Norton* v. *Allen,* 69 id. 306; *Condon* v. *Besse,* 86 id. 159; *Truett* v. *Wainwright,* 4 Gilm. 411.)

The record in the case at bar shows, that on November 28, 1888, Uhlendorf made a motion in the Superior Court to have the judgment set aside, and that that court made an order giving him time to plead, and requiring the judgment to stand as security.   The record further shows that Uhlendorf appeared by attorney and filed pleas to the action.   Whether the issue formed by the pleas thus filed has ever been disposed of does not appear.   In the exercise of its equitable jurisdiction the Superior Court opened the judgment to permit Uhlendorf to make defense, but merely suspended the enforcement of the lien until the defense should be passed upon.

The assignee took the property subject to the lien of the judgment, as above stated.   When the Superior Court stayed proceedings on the judgment to let in the defense, the assignee still held the property, or its proceeds, subject to the lien. The determination of the issue formed by the pleas was a matter exclusively within the jurisdiction of the Superior Court. (*Paddock* v. *Stout,* 121 Ill. 571.)   If there was no unlawful preference such as is condemned by the assignment Act, then the assignee held the fund subject to the result of the proceeding in the Superior Court.   If that proceeding, which the present record shows to be still pending, results in favor of the plaintiffs, the appellees here, then the suspended lien will take effect as of the date of the original levy of the execution, but if it results in favor of the defendant Uhlendorf, the appellees will not be entitled to the priority here claimed.

We are, therefore, of the opinion that the judgment of the Appellate Court is correct in reversing the order of the County Court and remanding the cause, but the judgment should be so far modified as to remand the cause to the County Court with directions to await the result of the pending proceeding

in the Superior Court, and, when such proceeding is ended, to allow the execution of the appellees to have priority out of the proceeds of the goods levied upon if the result is favorable to them, but if otherwise, to distribute such proceeds *pro rata* among the firm creditors.

The judgment of the Appellate Court is accordingly affirmed in so far as it reverses the decree of the county court and remands the cause, but the cause is remanded back to the Appellate Court with directions to modify its judgment in the manner herein specified.

*Judgment affirmed, modified and remanded.*