EMERSON

*v.*

GRAY.

(Court of Chancery of Delaware.  March 19, 1906.)

*Alexander M. Daly* and *William M. Hope,* for complainant. *Henry Ridgley, Jr.* and *William Watson Harrington,* for respondent.

NICHOLSON, Chancellor : The amended bill was filed in this cause for the purpose of restraining the collection of a number of judgments recovered by the respondent against the complainant before certain justices of the peace in Kent county, on which executions were issued, and returned nulla bona, and duly certified transcripts of the docket entries of the judgments, executions and returns filed in the offce of the prothonotary, and entered in the records of the Superior Court

in this county. The respondent has filed a general demurrer, and his counsel contend in an able and elaborate argument that the complainant has failed to make out a case which justifies the interference of the Court of Chancery. The jurisdiction of equity to say proceedings at law after judgment recovered, although of very ancient origin, was formerly the cause of frequent and violent contests between the chancellors and common-law judges of England; and it was not definitely established beyond dispute until the reign of James I, when a bitter contest between Lord Ellesmere and Lord Coke resulted in such a complete victory for Lord Ellesmere that the jurisdiction has never since been questioned. Of course, the cases in which it has been exercised are innumerable, and the general principles governing it have been applied very differently by different courts, but the governing principles have long been well settled and have been formulated over and over again by the highest authorities. Mr. Justice Gray in *Knox County v. Harshman*, 133 *U.S.* 154, 10 *Sup.Ct.* 257, 33 *L.Ed.* 586, uses the precise language employed over and over again by the Supreme Court in earlier cases when he says: "A court of equity does not interfere with judgments at law, unless the complainant has an equitable defense of which he could not avail himself at law, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents." He cites *Marine Ins. Co. v. Hodgson*, 11 *U.S.* 332, 336, 3 *L.Ed.* 362; *Hendrickson v. Hinckley*, 17 *How.* (*U.S.*) 443, 445, 15 *L.Ed.* 123; *Crim v. Handley*, 94 *U.S.* 652, 24 *L.Ed.* 216; *Phillips v. Negley*, 117 *U.S.* 665, 675, 6 *Sup. Ct.* 901, 29 *L.Ed.* 1013.

This is the fundamental principle, and my examination of the cases which has been an extensive one, discloses no carefully considered case which, when analyzed, fails to illustrate it, allowing for the differences involved in that class of cases where the court of equity merely interferes to stay proceedings at law temporarily, in order that an opportunity may be afforded for an application for relief to the law courts having jurisdiction over the judgment or proceeding in dispute. In a well-considered Connecticut case, *Pearce v. Olney*, 20 *Conn.* 554 (1850) the principle is admirably expressed as follows: "The object of injunctions to stay proceedings at law is to prevent

injustice by an unfair use of the process of a court. They are granted on the ground of the existence of facts, not amounting to a defense to the proceeding enjoined against, but of which courts of equity have jurisdiction, and which renders it against conscience that the party enjoined should be permitted to proceed in the cause. It is well settled that this jurisdiction will be exercised whenever a party, having a good defense to an action at law, has had no opportunity to make it, or has been prevented by the fraud or improper management of the other party from making it, and by reason thereof a judgment has been obtained which it is against conscience to enforce. Indeed, this falls directly within, and is but an illustration of, the general rule that equity will interfere to restrain the use of an advantage gained in a court of ordinary jurisdiction, which must necessarily make that court an instrument of injustice, in all cases where such advantage has been gained by the fraud, accident, or mistake of the opposite party."

In the suit before us, the facts as presented by the amended bill and the demurrer appear to be that the complainant, Fred E. Emerson, a former resident of Kent county, in this state, removed from Delaware on or about the 1st day of January, 1896, and took up his residence in Alabama, where he still continued to reside at the time this suit was commenced. He was the owner of a farm in this county of about the value of $2,000, and he left residing here a wife and daughter Ethel, with whom his wife's father, the respondent, made his home. About a year after his departure, to wit, on the 1st day of February, 1897, an action of assumpsit was brought against him by Bradford Gray, the said respondent, before a justice of the peace in Kent county, "for money furnished to or advanced to said Emerson's wife for actual necessities", his wife being the daughter of the said Bradford Gray, as aforesaid. The summons in this suit was returned by the constable indorsed, "Served by leaving copy at defendant's usual place of residence with his wife, February 5, 1897." Judgment by default for the sum of $185.25 and costs was given against the defendant, upon which execution was issued and returned nulla bona, and a duly certified transcript of the docket entries of the judgment, execution, and return was filed in the office of the prothonotary and entered in the records of the Superior Court of this county. Sub-

sequently similar suits were brought from time to time and judgment obtained in the same way, the constable's return being the same in each case, with the exception of one in which it was returned as being left "in the presence of his daughter Ethel," who was a minor. The last judgment was obtained against him December 8, 1900, being the last of 12, of which the seventh, eighth, ninth, and tenth were brought on the same day, to wit, March 31, 1900, and simultaneously, for $200 each, for the same cause of action; and the eleventh and twelfth were brought on the same day, to wit, December 1, 1900, being also for $200 each. These twelve judgments amounted in the aggregate to over $2,000, about the value of complainant's farm. Upon one of these judgments subsequent proceedings were taken and the farm advertised for sale on March 26, 1901, but before the day of sale further proceedings were stayed by the plaintiff's attorney. The complainant, Fred E. Emerson, had no notice or knowledge of any of these suits or proceedings until just before he filed his bill this cause, and during the whole time from his leaving Delaware in January, 1896, up to the commencement of this suit, he had been a bona fide resident of the state of Alabama, and had never, during that period, lived with his wife or resided in the state of Delaware. It is further alleged that during the whole of this period the said Bradford Gray, the respondent, resided continuously with his daughter, the wife of complainant, and was thereby actually aware of the fact that complainant had no place of abode in this state that his residence was not with his wife, and that he had no notice of the above-described suit.

Complainant further alleges as follows: "That he is informed and verily believes that the said Bradford Gray, and the said Orietta D. Emerson, the wife of your orator, conspired against your orator to secure the aforesaid judgments against him so as to acquire title to the real estate of your orator by means of a sale of the farm by execution process under said judgments." And also "that the said wife of your orator, who is Orietta D. Emerson, and with whom the summons in all (except one) of said cases was left, personally supervised the bringing of the aforesaid actions against your orator in the name of Bradford Gray, and personally directed the prosecution thereof and the further proceedings thereon." There is a further allegation "that

he had a sufficient legal defense to the cause of action in every one of the above-stated suits, and that he was not at all indebted to the said Bradford Gray at the time of the bringing of any of said suits or any time since." Complainant fails to state, however, the nature of his defense. This failure to set forth the nature of his defense is fatal to the complainant's claim for relief. The allegation which I have recited amounts to nothing more than the plea of nonassumpsit, and it is apparent, from the authorities cited above, that this court cannot interfere unless the complainant shows facts and circumstances to satisfy the Chancellor that his defense to the action at law was good and sufficient. If the bill had contained allegations showing that the complainant did have such a defense, then it would have been necessary for me to review and analyze at some length the cases cited in the brief of the respondent's counsel to sustain his contention that under no circumstances could this court inquire into the facts and circumstances surrounding the service of process or want of service when the return was regular. Such an analysis and review would show beyond question that the principle for which the respondent contends is stated with complete accuracy, because stated with the correct limitation, in one of the Supreme Court cases cited by respondent's counsel, as follows: "In cases of false returns affecting the defendant, where the plaintiff at law is not in fault, redress can only be had in the court of law where the record was made, and if relief cannot be had there, the party injured must seek his remedy against the marshal." *Walker v. Robbins,* 14 *How.* (*U.S.*) 585, 14 *L.Ed.* 552. If, on the contrary, it should appear that the plaintiff in the action at law had procured or was responsible for the false return, then the case comes within the guiding general principle cited above, and in the language of the Connecticut court already quoted, "falls directly within, and is but an illustration of, the general rule that equity will interfere to restrain the use of an advantage gained in a court of ordinary jurisdiction, which must merely make that court an instrument of injustice, in all cases where such advantage has been gained by the fraud, accident, or mistake of the opposite party." In the case before us the peculiar facts and circumstances show beyond a doubt, that for the false statement as to residence in the return, the respondent in this suit was responsible; and although, for the reasons I have stated, I am obliged

to decide against the complainant, it seem proper that I should state this conclusion for the guidance of counsel in the cause. I will also add that *Reigal v. Wood,* 1 *Johns.Ch.* (*N.Y.*) 407, cited in the briefs, although not a parallel case, is instructive in this connection as showing, in a suit to restrain proceedings at law, Chancellor Kent's method of drawing inferences of fraud fatal to the judgment from the facts and circumstances before him.

The demurrer is sustained, with leave to complainant to amend his bill.