CANTWELL *v.* CANTWELL.

[No. 29,305. Filed June 17, 1957. Rehearing denied September 17, 1957. Petition for writ of certiorari to U. S. Supreme Court denied March 3, 1958. See: — U. S. —, 2 L. Ed. 2d 712.]

*Friedrich, Petrie & Tweedle, Stanley A. Tweedle, Edwin H. Friedrich* and *Bernard A. Petrie*, all of Hammond, for appellant.

*Daniel F. Kelly, John F. Beckman, Jr.*, both of Hammond, and *Alfred J. Link*, of LaPorte, for appellee.

LANDIS, J.—Appellee brought suit and obtained a default judgment against appellant for a divorce, for alimony, attorney's fees, and custody of minor children of the parties.

Approximately twenty days after the default judgment was rendered, appellant entered a special appearance and filed verified motion to set aside the default judgment to which appellee filed answer. After a hearing upon the matter, the lower court overruled appellant's motion to set aside judgment. No question has been raised as to the form of the judgment appealed from in this case.[1]

Appellant has made numerous contentions on this appeal based upon the various specifications of his motion to set aside judgment, the principal ones being as follows: The trial court had no jurisdiction over his person, as no personal service of summons was had upon him at his alleged last and usual place of residence in Indiana. The due process clause of the Fourteenth Amendment of the Federal Constitution, and the due

---

1. The sufficiency of the court's ruling as a judgment is supported by the following cases: *Ayrshire Coal Co.* v. *Thurman* (1920), 73 Ind. App. 578, 127 N. E. 810; 128 N. E. 764; *State ex rel. Jordan, Admrx., etc.* v. *Marion Pr. Ct.* (1953), 232 Ind. 642, 114 N. E. 2d 770.

course of law clause of the Indiana Constitution (Article 1, §12) have been violated by the default decree entered against him by the trial court and the denial of his motion to set the judgment aside.

At the hearing on the motion to set aside judgment the following facts appeared: Appellee's suit for divorce against appellant was filed on June 4, 1953, and summons was served by leaving a copy at the last and usual place of residence of appellant at Michigan City in LaPorte County, Indiana. Appellant and appellee had previously lived at such residence as husband and wife, and appellee wife had, on January 27, 1953, temporarily separated from her husband and gone to stay with her parents in Chicago. Appellant husband on June 2, 1953 (two days before suit was filed and summons served), left the family home in Michigan City, LaPorte County, Indiana, with the two boys of appellant and appellee, and motored to California. Appellant had packed his furniture and belongings the day before he left, and most of such items were, by appellant's direction, transported to California by truck. Appellee wife attempted to visit the house on June 3, the day following his departure, to pick up the two boys as per an agreement between the parties relating to a divided custody arrangement, but was unable to gain admittance as appellant had already left for California with the boys without her knowledge. Appellee wife then consulted with her attorney, and on June 4 filed a divorce action against appellant in LaPorte County, Indiana, and on the same date a summons was purportedly served on appellant husband by leaving copy at his alleged last and usual place of residence in Michigan City, LaPorte County, Indiana.

When the summons was allegedly served by the sher-

iff at appellant's last and usual place of residence on June 4, he could find no one at the residence, and he left the summons under the door on the screened-in porch. Appellee first actually entered the house, after appellant's departure, on June 7, and she found drapes at the windows and some personal effects and belongings of appellant in the house, including an overcoat, bathrobe, shirt, and some of his shoes. The furniture from upstairs was gone but there was some remaining in the basement. It also appeared that appellant was still the owner in his individual name of the residence estimated to be of the value of $35,000.00.

It further appeared that appellant shortly before leaving, stated to a neighbor: "It's no use. Since [my wife] is suing for divorce, I am going to California." (Tr. p. 216, lines 19 and 20.) He thereupon left by automobile for California, arriving there on June 21, 1953, which was 17 days after the service of process. It was not disputed that appellant had actual notice of the filing of the divorce action at least by July 25, 1953, and ten days thereafter on August 4, 1953, appellee, in default of appellant's appearance, was granted a divorce, alimony, attorney's fees and custody of the children of the marriage. Thereafter, on August 25, 1953, appellant entered special appearance and filed verified motion to set aside the default judgment to which appellee filed answer in reply.

It further appears from the record that after the divorce was granted appellee pursued appellant to California, and in court proceedings was awarded custody of the children by a California court; but, nevertheless, appellant, after such court hearing, again departed with the children for parts unknown. Appellant's present

whereabouts are still unknown to his own attorneys of record, who state they have had no direct contact with him, but have only been in communication with him through an intermediary.

We believe the foregoing facts and the reasonable inference therefrom were strongly persuasive that appellant remained a resident of LaPorte County, Indiana, at the time of the service of process upon him,[2] but before it is necessary to consider such matter, we should determine whether appellant properly presented the question to the lower court so that the court's overruling of the same was error.

Appellee has contended that for numerous reasons it would be improper or inequitable in the case at bar to allow appellant to vacate the judgment in question. From an examination of appellant's motion to set aside judgment, it is apparent that nowhere in such motion is there an allegation that appellant has a good and meritorious defense to the cause of action upon which the judgment was based and which he seeks here to set aside. What is the materiality of this omission?

Appellant, in the case before us, has not predicated his motion to set aside default upon the statutory remedy prescribing relief for default judgments taken through mistake, surprise or excusable neglect.[3] He

---

2. See: *Nelson et al.* v. *Haley* (1953), 232 Ind. 314, 111 N. E. 2d 812, 112 N. E. 2d 442, where this court held that evidence that a person two days before service of process was a resident of 4129 Cornelius Avenue, Indianapolis, Indiana, sufficiently supported the court's finding that on the date of service such address was said person's last and usual place of residence.

3. Acts of 1941, ch. 72, §1, p. 185, being Burns' Indiana Statutes, §2-1068 (1946 Replacement).

concedes he has been appealing to the inherent and discretionary powers of the trial court to set aside a judgment which he alleges was taken against him without proper notice. Appellant has established no common law or statutory basis for relief, and his right to set aside the judgment must rest, if it is to prevail, upon equitable principles.

We recognize the unquestioned general weight of authority that a judgment-defendant who seeks to vacate a judgment on account of want of service of process, the record not showing any appearance to the action, must allege and prove that he has a meritorious defense to the cause of action on which the judgment was rendered. As stated in Freeman on Judgments. (5th Ed.), Vol. 3, §1189, at pp. 2468 and 2469:

> ". . . a preponderance of the decisions upon this subject declares that, nothwithstanding an alleged want of service of process, a court of equity will not interfere to set aside a judgment until it appears that the 'result will be other or different from that already reached,' or, in other words, that there was a defense to the action, either entire or partial. The extraordinary powers of equity will not be used to take away the legal advantage acquired under such circumstances in the enforcement of a just debt, in favor of one who does not deny that he owes the debt but merely seeks the right to defend against a claim to which he has no defense." See: *Meyer* v. *Wilson* (1906), 166 Ind. 651, 656, 76 N. E. 748; *Williams et al.* v. *Hitzie et al.* (1882), 83 Ind. 303, 308, 309; *Woods* v. *Brown, Guardian* (1884), 93 Ind. 164, 168, 47 Am. Rep. 369; *Schilling* v. *Quinn* (1912), 178 Ind. 443, 447, 99 N. E. 740; *Fletcher* v. *Barton* (1915), 58 Ind. App. 233, 236, 108 N. E. 137; *Garrison* v. *Miller* (1916), 62 Ind. App. 485, 487, 488, 112 N. E. 22, 23 Cyc. 962.

For cases from other jurisdictions, see Note 4.

High on Injunctions (4th Ed.), Vol. 1, §229 a, p. 224, states the rule as follows:

"The more recent decisions . . . have set the question at rest, and it may now be stated as a rule, supported by the great weight of authority, that, even though the judgment be entirely void for want of proper service of process, relief will not be granted unless the complainant can show that he has a valid defense to the claim upon which the judgment was founded. The rule as thus announced is not only supported by the decided weight of

4. *Massachusetts Benefit Life Assn.* v. *Lohmiller* (1896), 7 Cir. 74 Fed. 23, 20 C. C. A. 274; *Prudential Casualty Co.* v. *Kerr* (1918), 202 Ala. 259, 80 So. 97; *Ingram* v. *Alabama Power Co.* (1917), 201 Ala. 13, 75 So. 304; *McDonald* v. *Cawhorn* (1907), 152 Ala. 357, 44 So. 395; *Dunklin* v. *Wilson* (1879), 64 Ala. 162; *Secor & Brooks et al.* v. *Woodward* (1845), 8 Ala. 500; *Williams* v. *Alexander* (1919), 140 Ark. 442, 215 S. W. 721; *Rotan* v. *Springer* (1889), 52 Ark. 80, 12 S. W. 156; *State* v. *Hill* (1887), 50 Ark. 458, 8 S. W. 401 (overruling *Ryan* v. *Boyd* (1878), 33 Ark. 778); *Hawley* v. *State Assurance Co.* (1920), 182 Cal. 111, 187 Pac. 1; *Lee* v. *Colquhoun* (1917), 175 Cal. 16, 164 Pac. 894; *Bell* v. *Thompson* (1905), 147 Cal. 689, 82 Pac. 327; *Jeffery* v. *Fitch* (1879), 46 Conn. 601; *Emerson* v. *Gray* (1906), Del. Ch., 63 Atl. 768 (not officially reported in State report); *Bernhard* v. *Idaho Bank & Trust Co.* (1912), 21 Idaho 598, Ann. Cas. 1913E, 120; *Hier et al.* v. *Kaufman et al.* (1890), 134 Ill. 215, 25 N. E. 517; *Colson* v. *Leitch* (1884), 110 Ill. 504; *Curran* v. *Good* (1917), 204 Ill. App. 236; *Old Colony Life Ins. Co.* v. *Graves* (1915), 200 Ill. App. 71; *Pierson* v. *Linn* (1902), 101 Ill. App. 624; *Coon* v. *Jones* (1859), 10 Iowa 131; *Tootle* v. *Ellis* (1901), 63 Kan. 422, 65 Pac. 675, 88 Am. St. Rep. 246; *Newman* v. *Taylor* (1892), 69 Miss. 670, 13 So. 831; *Harris* v. *Gwin* (1848), 10 Smedes & M. (Miss.) 563; *Campbell Printing Press & Mfg. Co.* v. *Marder* (1897), 50 Neb. 283, 69 N. W. 774, 61 Am St. Rep. 573; *Wilson* v. *Shipman* (1892), 34 Neb. 573, 52 N. W. 576, 33 Am. St. Rep. 660; *Batzer* v. *Halliday* (1915), 31 N. D. 361, 153 N. W. 994; *Halverson* v. *Bennett* (1911), 22 N. D. 67, 132 N. W. 434; *Gifford* v. *Morrison* (1882), 37 Ohio St. 502, 41 Am. Rep. 537; *Pettis* v. *Johnston* (1920), 78 Okla. 277, 190 Pac. 681; *Hockaway et al.* v. *Jones* (1899), 8 Okla. 156, 56 Pac. 1054; *Miller* v. *Shute* (1910), 55 Or. 603, 107 Pac. 467; *Crocker* v. *Allen* (1891, 34 S. C. 452, 13 S. E. 650, 27 Am. St. Rep. 831; *Brown* v. *Clippinger* (1923), 113 Tex. 364, 256 S. W. 254; *Masterson* v. *Ashcom* (1881), 54 Tex. 324; *Preston* v. *Kindrick* (1897), 94 Va. 760, 27 S. E. 588, 64 Am. St. Rep. 777; *Kremer* v. *Sponholz* (1906), 129 Wis. 549, 109 N. W. 527; *John V. Farwell Co.* v. *Hilbert and Others* (1895), 91 Wis. 437, 65 N. W. 172, 30 L. R. A. 235.

authority but seems more in accord with the fundamental principles which govern courts of equity in granting equitable relief against the enforcement of judgments."

Black on Judgments, (2d Ed.), Vol. 1, §376, p. 596, states:

"It is generally held that where a judgment at law is void for want of jurisdiction, no summons or notice having been served on the defendant, nor opportunity given him for defense, nor any appearance entered by or for him, equity will relieve against the judgment, if it be shown that there is a meritorious defense to the action."

See also: Pomeroy's Equity Jurisprudence (5th Ed.), §393 c, p. 83, as follows:

"On this fundamental principle of equity also, it is said, is based the rule that a meritorious defense must be shown if a party comes into a court of equity and seeks to set aside or enjoin a judgment regular on its face."

And §1364, p. 985, as follows:

"In general, the party seeking the aid of equity to enjoin a judgment at law against him must not only show some ground for interference, within the doctrine of the text, but must also show that he has a good and sufficient defense to the cause of action, so that on a re-examination and retrial the result would be different."

See also: American Annotated Cases, 1913 E, p. 124 as follows:

"It is a well-settled rule that where a judgment is regular on its face, one who moves to set it aside or enjoin its collection must set forth a meritorious defense to the original action."

This court has similarly held that under the surprise and excusable neglect statute, a motion or complaint to

set aside a judgment will not be entertained, ▮▮ unless among other things, the party seeking to set aside the judgment alleges that he has a meritorious defense thereto. *Hoag* v. *Jeffers* (1929), 201 Ind. 249, 159 N. E. 753; *Woodard* v. *Killen* (1925), 196 Ind. 570, 148 N. E. 195; *Nash* v. *Cars et al.* (1883), 92 Ind. 216; *Nord* v. *Marty* (1877), 56 Ind. 531, 535; *Buck* v. *Havens* (1872), 40 Ind. 221; *Hill and Another* v. *Crump* (1865), 24 Ind. 291, 294; *Rooker* v. *Bruce* (1908), 171 Ind. 86, 89, 85 N. E. 351.

The rule requiring a meritorious defense to be shown before a judgment will be set aside, in a proceeding such as the one before us, is a reasonable condition interposed by courts of equity.[5] This is not unreasonable to a defendant,[6] for under the authorities the only showing such defendant need make to invoke the aid of equity in this respect is to indicate he has a prima facie meritorius defense to the judgment he seeks to set aside.[7] This condition preliminary to equity's taking jurisdiction is premised upon the ground that equity will not interfere with a judgment recovered at law, unless such

5. 19 Am. Jur. "Equity," §22.
A court of equity has power to make its granting of relief dependent upon the performance of conditions by a party litigant, if the conditions are such as are imposed in the exercise of a sound discretion, and of a character calculated to satisfy the dictates of conscience.

6. See: 16A C. J. S., "Constitutional Law," §712, p. 1222, "Reasonable conditions and restrictions governing the enforcement of rights do not abridge the constitutional guaranty insuring open courts and a remedy for injuries." See also: *Woolley* v. *Indiana Asphalt Pav. Co.* (1918), 187 Ind. 575, 120 N. E. 597.

7. See: 49 C. J. S., "Judgments," §349, p. 704, "Although the party seeking relief must show at least presumptively that he has a defense, the requirement of a meritorious case does not necessitate an absolute guarantee of victory or a conclusive showing of sufficient cause of action or defense. It is enough to present facts from which it can be ascertained that the complaining party has a sufficiently meritorious claim to entitle him to a trial of the issue at a proper adversary proceeding; it suffices to establish good faith and to tender a seriously litigable issue."

judgment is unjust or unconscionable.[8] There is a maxim that courts of equity will not do or require the doing of a vain or useless thing,[9] yet there is nothing more useless or vain than the setting aside of a judgment although no defense to it exists. Defendant's action to set aside the judgment without any claim of merit to his defense is accordingly only a moot proceeding as far as equity is concerned.[10] Equity is also desirous of preventing circuity of action,[11] and this purpose is served by equity's refusal to upset a judgment when the defendant petitioner has set forth nothing to indicate that if the cause were tried again on the merits a different result would be reached. The indisposition of courts of equity to set aside judgments for no reason was succinctly stated in *Meyer* v. *Wilson* (1906), *supra*, 166 Ind. 651, at page 658, 76 N. E. 748, at page 750:

"'. . . And if a party can say nothing against the justice of a judgment, can give no reason why in equity he ought not to pay it, a court of equity will not interfere, . . .'"

As appellant's motion to set aside judgment was insufficient, in view of its failure to allege appellant had a good and meritorious defense to the cause of action upon which the judgment was based, it is accordingly our conclusion that the lower court's action in overruling the motion to set aside judgment was not error.

It is therefore unnecessary for us to consider upon

---

8. 49 C. J. S., "Judgments," §349, *supra*.
9. *Hutcheson* v. *Hanson* (1951), 121 Ind. App. 546, 98 N. E. 2d 688; 30 C. J. S., "Equity," §16.
10. *Doss* v. *Yingling* (1937), 103 Ind. App. 555, 9 N. E. 2d 139.
11. *Wiman* v. *First Christian Church of Mayfield* (1938), 273 Ky. 821, 117 S. W. 2d 989; *Young* v. *Weber* (1934), 117 N. J. Eq. 242, 175 Atl. 273.

this appeal the respective specifications in appellant's motion to set aside judgment as to the alleged invalidity of the default judgment rendered by the lower court.

It is similarly unnecessary to discuss appellant's further contention that the lower court committed error in denying appellant's petition for production and inspection of a letter, as appellant has conceded this is irrelevant if our opinion is not predicated on an estoppel.

The judgment of the lower court is affirmed.

Bobbitt, J., concurs.

Arterburn, C. J., concurs with opinion, in which Achor, J., concurs.

Emmert, J., concurs with opinion.

## Concurring Opinion

Emmert, J.—It is quite apparent appellants action to set aside the default judgment was not brought under §2-1068, Burns' 1946 Replacement, for he does not base it upon "mistake, inadvertence, surprise, or excusable neglect, . . ." Nor do I believe it was a petition appealing to the equitable powers of the court. There was an adequate remedy at law.

Appellant's pleading is in substance and in fact a petition to vacate the judgment because of a mistake in the service of process at his residence, which mistake did not appear on the face of the record. A petition to vacate a judgment for a mistake of fact is in law a petition for the common law writ of error *coram nobis*. *Sanders* v. *State* (1882), 85 Ind. 318; *State ex rel. McManamon* v. *Blackford C. Ct.* (1951), 229 Ind. 3, 95 N. E. 2d 556. "A mistake in regard to the existence of a fact upon which jurisdiction to proceed depends and which defect does not appear on the face of the record is ground for a writ of error *coram nobis*. . . .

The writ lies to obtain relief against a judgment taken without process or notice, or where there were defects in the process, or in the service of the process." 34 C. J., p. 396, §610. See 49 C. J. S., p. 566, §312; 31 Am. Jur., p. 323, §802.

No motion for a new trial is contemplated in an action for writ of error *coram nobis*. *Fluty* v. *State* (1947), 224 Ind. 652, 71 N. E. 2d 565; *Lucas* v. *State* (1949), 227 Ind. 486, 86 N. E. 2d 682; *State ex rel. Blanton* v. *Smith* (1949), 229 Ind. 1, 86 N. E. 2d 84. The historical origin of the writ as well as Rule 2-40 compel this conclusion. The motion for a new trial presented nothing, and therefore did not extend the time for perfecting the appeal.

Assuming, without deciding, that the overruling of appellant's "motion" on February 4, 1955, constituted a finding and a judgment, no extension of time to file a transcript and assignment of errors was ever filed here until June 29, 1955. The time for perfecting the appeal had expired, and this court never acquired jurisdiction to entertain the appeal. "A failure to perfect an appeal from a final judgment within ninety days, or within time properly extended under Rule 2-2, fails to give this court jurisdiction of the appeal and it should be dismissed. *State Board of Tax Commissioners* v. *Stanley* (1952), 231 Ind. 338, 341, 108 N. E. 2d 624; *Stocker* v. *City of Hammond* (1938), 214 Ind. 628, 16 N. E. 2d 874; *Brady* v. *Garrison* (1912), 178 Ind. 459, 460, 99 N. E. 738; *Vail* v. *Page* (1911), 175 Ind. 126, 131, 93 N. E. 705." *Dawson* v. *Wright* (1955), 234 Ind. 626, 632, 129 N. E. 2d 796, 799.

The appeal should be dismissed.

CONCURRING OPINION

ARTERBURN, C. J.—I concur in the majority opinion;

however, I think there is a more cogent reason for sustaining the decision of the trial court. To me, it appears that principles of waiver and estoppel are applicable here. A review of the evidence is helpful on this point.

The appellant and appellee were having marital difficulties in January, 1953, when the appellee went to her parents' home in Chicago, and consulted her attorney in Hammond, Indiana, Richard P. Tinkham. Her attorney got in touch with Albert E. Jenner, Jr., attorney at Chicago, and a mutual friend of both parties. He later became attorney for appellant. The two attorneys discussed the case from time to time, and submitted conditions and terms for settlement. Appellant's attorney, Albert E. Jenner, Jr., on March 14, 1953, in one of his letters, wrote appellee's attorney, in part:

> "I am assuming that, in the meantime, pending completion of Dr. Boshe's interviews, matters will remain in *status quo*. Maintenance of the *status quo* is imperative if anything is to be worked out. I wish you would write me confirming that fact because I have induced Mr. Cantwell to proceed on that premise and I will be personally very much embarrassed if you had in mind proceeding otherwise and my not being advised thereof."

On March 23, 1953, Mr. Tinkham answered without specifically using the words *"status quo"*, stating:

> "In general, I agree with everything you have said. It is my wish that Mr. and Mrs. Cantwell can find the basis for a reconciliation. . . . Consequently, I believe this situation, which I hope is temporary, should be continued until such time as a definite decision can be reached."

Attorney Jenner denies sharply there was any agreement to keep the *status quo*; however, Mr. Tinkham

states emphatically there was such an agreement, and that it was re-emphasized and discussed in various conversations between him and Mr. Jenner. Part of Mr. Tinkham's testimony is in substance as follows:

"I recall a telephone conversation with Mr. Jenner in which the agreement that Mr. Cantwell would stay in the State of Indiana was discussed and it seems to me that Mr. Jenner did say that he had persuaded Mr. Cantwell to give up the idea of going to California—that is a hazy recollection. There is no doubt in my mind about the agreement that Mr. Cantwell was to remain in Indiana. We agreed not to file the divorce pending determination of negotiations. That was part and parcel in my mind of the whole status under agreement. I heard Mr. Jenner say yesterday on the stand that there was no such agreement. One or the other is mistaken. One of us is wrong about it."

On May 11, 1953, Mr. Tinkham submitted a number of reconciliation conditions. On May 28 and June 1, 1953, Mr. Tinkham called appellant's attorney with reference to what Mr. Cantwell's reactions were to these proposals. Mr. Jenner's answer was that he had discussed the terms with appellant's brother, an attorney in Chicago, and had no direct answer from appellant.

On June 1, 1953, the appellant, Frank Cantwell, arranged to have his furniture in the house shipped out to California in care of another person. Sometime around noon on June 2, 1953, the appellant left Michigan City, Indiana, by automobile taking his two sons with him, at that time ages 7 and 5. On June 3, 1953, the appellee arrived in Michigan City to get her two sons who were to visit with her, under a pending agreement with appellant. She found their home was abandoned, the furniture had been moved out, and that the appellant had left the day before. After the appellant left the State of Indiana, appellee, after

considerable effort, located him in California, and instituted an action there to recover the custody of the two boys. Appellant appeared there, and contested the action but the California court awarded the custody of the two boys to Mrs. Cantwell. On the night before the appellant was to surrender the custody of the boys in California, he again fled the jurisdiction of the court.

Appellee filed her suit for divorce on the 4th day of June, 1953, and summons was served at appellant's last and usual place of residence in Michigan City, in the State of Indiana. Judgment was entered in her favor accordingly, and before the term of court ended, the appellant, through his attorney, appeared specially, and filed a motion to set aside the judgment on the ground that he had no residence in Indiana at the time the summons was issued and served. In the hearing on that motion, Mr. Tweedle, the appellant's attorney, stated in substance:

> "I do not know the present address of the defendant Frank Cantwell. The only address I ever had was the one in Carmel, California. I have never personally discussed this case with the defendant. The address in California is the only one I ever had at any time; subsequently I communicated by letter with him through devious means. I have never discussed the case with him by telephone. My employment was by Mr. Albert Jenner, Jr."

He further said he had never discussed the case with Mr. Cantwell except to advise him by letter that Mr. Tinkham would consent to the setting aside of the judgment if Mr. Cantwell would authorize an appearance and defense on the merits.

We must accept the evidence most favorable to appellee in support of the finding and judgment of the trial court. The trial court has determined whom it will believe, and how the facts should be resolved. The

appellant's attorneys have improperly gone outside of the record, and stated that the trial court, in commenting upon its general finding, said it was making no decision upon the issue of estoppel, and have further challenged the appellant's attorneys to deny this statement. To say the least, this was not the way matters are presented to this court on appeal. We look only to the record. The record here shows the court overruled the appellant's demurrer to appellee's plea of estoppel or waiver, as the case may be. This was an issue in the hearing on the motion to set aside the judgment, and the court decided it was a good issue if proved. If the appellant desired a special finding he should have asked for it instead of attempting to present one in this manner, *dehors* the record.

The appellant is an attorney who retired from the practice of law in Chicago in 1947, and his brother, who acts as an intermediary at this time, is also an attorney. They undoubtedly know the significance of an agreement and the meaning of *status quo,* and the effect of waiver and an estoppel. The appellee had an opportunity to file suit first, and then to talk about a settlement *afterwards,* if she had desired. Ordinary precaution in view of appellant's previous talk of going to California would have dictated such a suit be filed unless she relied upon the representation of appellant and his attorneys that the *status quo* would not be changed.

The appellant attempts to avoid the effect of his agreement to maintain the *status quo* by a reference to the statute, Acts 1881 (Spec. Sess.), ch. 38, §837, p. 240, being §4-3609 Burns' 1946 Replacement:

"An attorney has authority, until discharged or superseded by another:

"First. To bind his client in an action or special proceeding by his agreement filed with the clerk

entered upon the minutes of the court, and not otherwise."

The appellant states that this statute applies to agreements made after suit is filed, and impliedly prohibits agreements prior to the filing of a suit made by attorneys for their clients. We find no prohibition in the statute against attorneys, pending negotiations and prior to filing a suit, binding their clients, as an agent might bind his principal where they have authority, and are authorized to do so. An attorney at least has the usual authority of an agent for his principal. It seems to us the statute referred to is applicable to cases where there is no expressed or implied authority from the client shown during a pending proceeding. It really extends the usual scope of authority of an agent where he is an attorney in a pending action. Since no action was pending the statute was not applicable to an agreement made by attorneys for their clients.

The appellant knew of the arrangements of his attorney to maintain the *status quo*. His attorney in writing Mr. Tinkham, said he had "induced Mr. Cantwell to proceed on that premise." It is undisputed that during negotiations the attorneys did enter into agreements which were accepted and acted upon by the parties. This included:

1. The custody of the two boys should be alternated at two week intervals between the parties pending negotiations.

2. The parties should remain temporarily separated.

3. That they should make a good faith attempt to settle their difficulties through their attorneys.

These agreements strengthen and support the conclusion that there was a necessary corollary agreement that the relationship of the parties should remain in

the *status quo* which include not only their residence, but the status of the property which each owned.

The evidence shows appellant and his attorney had actual notice of the filing of the divorce suit prior to the entry of the judgment. His contention that he was not properly served with a summons, if true, is the result of his own violation of the *status quo* agreement.

There is no merit in appellant's contention that the trial court erred in refusing a request to have appellee produce a letter written by one of her co-counsel (Tinkham) to another of her co-counsel (Link). Regardless of the failure to allege or show she has possession of the letter, an order of production would have violated the confidence existing between attorney and client. Acts 1881 (Spec. Sess.), ch. 38, §275, p. 240, being §2-1714, Burns' 1946 Replacement; Acts 1937, ch. 88, §1, p. 452, being §4-3608, Burns' 1946 Replacement. It is abhorrent to one's sense of privacy to think that one party may pry into the confidence and private files of the attorney of the opposing party. 58 Am. Jur., Witnesses, §462, p. 259.

The appellant in this case gave up his right and privilege to change his residence, and move from the State of Indiana pending negotiations, in consideration that the appellee would not file suit during that time, and thus obtain jurisdiction of the person of the appellant. This was a binding contract. Existing rights were given up by each party. There may be some who would urge that this is in truth a *waiver* by the appellant of his right to change his residence for a consideration. We are not inclined to quibble over the name given the principle involved, whether we call it "waiver" or "promissory estoppel." Waiver and estoppel in many cases overlap. Be that as it may, there are sufficient facts for the application of the doctrine of promissory

estoppel here. 3 Pomeroy's Equity Jurisprudence (5th Ed.), §808b, p. 211; 31 C. J. S., Estoppel, §61a, p. 242.

Principles of estoppel are founded upon justice and fair dealings. It prevents a party from denying the existence of a fact, and thus profiting by his own wrong, or from taking inconsistent positions in order to gain an advantage. 19 Am. Jur., Estoppel, §39, p. 637; *Robertson* v. *Smith et al.* (1891), 129 Ind. 422, 28 N. E. 857, 15 L. R. A. 273.

> "To prevent fraud or injustice, however, a promise is sometimes made the basis of an estoppel if the promise has been made to induce action and has in fact done so, usually where abandonment of a right is involved." 31 C. J. S., Estoppel, §80, p. 289; Restatement, Contracts, §90, Ind. Annotations thereto.

There is no reason why this court should reject the plea of estoppel or waiver made by the appellee, and direct her to another remedy in contract where damages alone would not adequately grant the relief to which she would be entitled. There should be no circuity of actions in this case. The relief should be direct by waiver or estoppel in the suit affected by the breach of good faith.

The policy of the law has always been the encouragement of settlements, and the avoidance of litigation. In the pursuit of that objective this court should look with favor upon collateral agreements made in good faith pending negotiations to keep matters in *status quo*, and should condemn the breaches of such agreements in the manner and form exhibited by the evidence here.

The judgment of the trial court should be affirmed.

Achor, J., concurs.

NOTE.—Reported in 143 N. E. 2d 275.

EMMERT, J.—This is an appeal from a judgment entered for failure of appellant to amend and plead over after a demurrer had been sustained to its complaint.