**Dr. K. T. ANG, Appellant (Plaintiff Below),**

**v.**

**HOSPITAL CORPORATION OF AMERICA d/b/a Terre Haute Regional Hospital and Regional Radiologists, Inc., Appellees (Defendants Below).**

**No. 1–379A96.**

Court of Appeals of Indiana, First District.

Oct. 11, 1979.

Rehearing Denied Dec. 4, 1979.

---

Stephen L. Trueblood, Bolin & Trueblood, Terre Haute, for appellant.

Gus Sacopulos, Sacopulos, Crawford and Johnson, Terre Haute, James L. Peterson, Ice; Miller, Donadio & Ryan, Indianapolis, Arnold H. Brames, Terre Haute, for appellees.

ROBERTSON, Judge.

Dr. K. T. Ang (Dr. Ang) appeals from the granting of summary judgment in favor of the defendants, Hospital Corporation of America (Hospital) and Dr. McCormick,[1] on Dr. Ang's claim of breach of contract and tortious interference of contractual relations. We reverse and remand for trial.

The facts are that Dr. Ang began practice on the staff of St. Anthony's Hospital in the radiology department on January 24, 1972. His only contractual relationship, however, was with the then-director, Dr. Hogan. Dr. Ang was first an associate, and then a partner, of Dr. Hogan. Dr. Hogan, in turn, did have a contractual relationship with the hospital. The relationship between the hospital and the doctors was not that of employer and employees, but rather the doctors would perform the type of services or speciality needed at the hospital as cases required. The hospital did not bill the patients or guarantee income or workload; rather this task was left to Drs. Hogan and Ang.

This arrangement continued until July 1, 1975, when the Hospital took over St. Anthony's Hospital. The Hospital decided a new director was needed to revitalize the radiology department and began the search for one. Dr. Hogan and Dr. Ang were informed of this development. Dr. Hogan resigned on May 17, 1976, and Dr. Ang was left doing most of the work with the assistance of a semi-retired doctor. No written contract was entered into between the Hospital and Dr. Ang. The working relationship was left as it had been under Dr. Hogan's tenure.

Realizing that a new director was to come in, Dr. Ang sought to protect himself by entering into a "Notification of Termination Agreement" with the hospital. This agreement provided that either party wanting to terminate Dr. Ang's "services" would have to give 90 days written notice to the other. This document was signed by Dr. Ang and the Hospital administrator on

---

1. Dr. McCormick has incorporated his practice in Indiana under the name of Regional Radiologists, Inc.

March 25, 1976.[2] Otherwise the working relationship was left status quo.

On August 8 or 9, Dr. McCormick began duty as the new director. His understanding was that he would have full and complete control. It was only upon starting his practice that he found out about the Dr. Ang termination agreement. Dr. McCormick and Dr. Ang did negotiate as to whether Dr. Ang could join the Dr. McCormick "team", but they could not reach an agreement. Notice of termination was given Dr. Ang by the Hospital administrator on August 9, 1976.

Dr. Ang contends that Dr. McCormick and the hospital administration "conspired" to decrease his workload and thus decrease his income during this 90 day period. Dr. Ang further contends that these actions were a breach of his understanding of the agreement reached between the hospital and himself, and that Dr. McCormick's actions constituted tortious interference with this contractual relationship.

After deposing Dr. Ang, Dr. McCormick, and the Hospital administrator, the defendants moved for and were granted summary judgment with the trial court finding that there were no contractual relationships between Dr. Ang and the defendants, and no conspiracy to deprive Dr. Ang of work.

The sole issue in this case is whether summary judgment is appropriate.

When reviewing the grant of summary judgment, the appellate court must determine whether there is any genuine issue of material fact and whether the law was correctly applied. *Matter of Big Raccoon Conservancy District et al. v. Kessler Farms Corp.*, (1977) Ind.App., 363 N.E.2d 1004; *Hale v. Peabody Coal Co.*, (1976) Ind. App., 343 N.E.2d 316; Ind. Rules of Procedure, Trial Rule 56. The burden is upon the movant to establish that no material facts are in genuine issue and any doubt must be resolved against the movant. *Hale, supra* at 320. Thus, for purposes of determining whether to grant the motion, the facts set forth in the non-moving party's affidavits are taken as true, and the products of discovery are liberally construed in his favor. *Hale, supra* at 320; *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640. And, even if the facts are not in dispute, summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Hale, supra* at 320; *Yerkes v. Washington Manufacturing Co., Inc.*, (1975) 163 Ind. App. 692, 326 N.E.2d 629. "In short, summary judgment is not a procedure for trying facts and determining the preponderance of the evidence. Rather, it is a procedure for applying the law to the facts when no factual controversy exists." *Central Realty, Inc. et al. v. Hillman Equipment, Inc.*, (1969) 253 Ind. 48, 57, 246 N.E.2d 383, 389.

Both Dr. Ang and the Hospital agree that they entered into the "Notification of Termination Agreement" which provided for ninety days written notice before termination of Dr. Ang's "services" could take place. Both parties also agree that a contractual relationship existed because of this agreement. Thus, the Hospital admits that it bargained away in the contract certain rights when it states in its brief: "Clearly, the Hospital had the right to enter into an exclusive contract for radiology services

**2.** This document reads in pertinent part as follows:

NOTIFICATION OF TERMINATION
AGREEMENT

This Notification of Termination Agreement has been executed on this 25th day of March, 1976, by and between Terre Haute Regional Hospital and Dr. K. T. Ang.

It is the intention of the undersigned to agree to a method of notification of termination as follows:

(1) If Terre Haute Regional Hospital no longer desires the services of Dr. K. T. Ang they will so notify by written letter 90 days prior to the date of actual termination. The 90 day period will commence as of the date of the acknowledged receipt of the letter.

(2) If Dr. K. T. Ang no longer desires to provide his services to Terre Haute Regional Hospital, he will so notify by written letter 90 days prior to the date of actual termination. The 90 day period will commence as of the date of the acknowledge [sic] receipt of the letter.

with others than Dr. Ang, and could have enforced that right at any time *were it not for the termination agreement with Dr. Ang.*" [Our emphasis.]

We part company with the trial court's reasoning, however, when we examine the possibility of a factual controversy as to the reasonable inferences to be drawn from the agreement. In granting the summary judgment, the trial court concluded, since no explicit written or oral agreement was made between the Hospital and Dr. Ang as to workload, that Dr. Ang had no contractual rights on the matter. From an examination of the surrounding circumstances of the termination agreement,[3] we think that it is an equally reasonable inference that there was an implicit contractual term, as part of the termination agreement, that the workload would be shared reasonably and fairly and that the parties would act in good faith in this regard. Certainly it is reasonable to conclude that the reason for the agreement was that both parties could have at least ninety days notice before the working arrangement they had would cease. Implicit to carrying out this rationale for the agreement is the contractual term that the Hospital could not deliberately exclude from Dr. Ang a fair and reasonable share of the workload.[4]

The Court, in interpreting a contract, can infer a contractual term to give meaning to the intentions of the parties, *Coleman v. Chapman*, (1966) 139 Ind.App. 385, 220 N.E.2d 285, and we will enforce such a term as if it were an express one. *Lawrence v. Cain*, (1969) 144 Ind.App. 210, 245 N.E.2d 663.

It is a factual question yet to be resolved whether this inference that we make as part of our review of the grant of summary judgment is the one that will prevail in the trial court. Even if the inference is accepted, there is also the factual controversy of whether the Hospital did actually deprive Dr. Ang of a fair and reasonable share of the workload and whether both parties acted in good faith on the matter. For the same reasons as outlined above, it also remains to be resolved whether Dr. McCormick tortiously interfered with the contractual relationship of Dr. Ang and the Hospital.

We reverse and remand for trial.

LOWDERMILK, P. J. and NEAL, J., concur.

3. In determining the intention of the parties, a contract should be examined in the light of the surrounding circumstances existing at the time it was made. The court should consider the nature of the agreement, together with all the facts and circumstances leading up to the execution of the contract, the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. *Coleman v. Chapman*, (1966) 139 Ind.App. 385, 220 N.E.2d 285.

4. We can not reasonably infer from the termination·agreement and the surrounding circumstances that Dr. Ang had been given the exclusive right to provide radiology services or even that he had been promised his former share of the workload. Both parties to the agreement knew the appointment of a new director and associates was imminent and that the new director and associates would have to be accommodated as to workload.