Dorothy **WHITAKER** and Harold Whitaker, Plaintiffs/Appellants,

v.

ST. JOSEPH'S HOSPITAL, Nermin D. Tutunji, M. D. and VanFleit, M. D. and Associates, Inc., Defendants/Appellees.

No. 3–479A103.

Court of Appeals of Indiana, Third District.

Jan. 29, 1981.

Rehearing Denied March 4, 1981.

---

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, Kokomo, Edward A. Zych, Matthews-Petsche & Associates, South Bend, for plaintiffs/appellants.

Arthur A. May, Vincent P. Campiti, May, Oberfell, Helling, Lorber, Campiti & Konopa, South Bend, for St. Joseph's Hospital.

Edward N. Kalamaros, Joseph M. Forte, Edward N. Kalamaros & Associates, Professional Corporation, South Bend, for other defendants/appellees.

STATON, Judge.

Dorothy D. Whitaker and her husband, Harold Whitaker, brought a medical malpractice action against Dr. Nermin D. Tutunji, VanFleit, M. D. and Associates (Associates) and St. Joseph's Hospital. The trial court granted motions for summary judgment made by Dr. Tutunji and Associates. After a trial as to the remaining defendant, St. Joseph's Hospital, the jury returned a verdict for the hospital and against the Whitakers. Judgment was entered accordingly.

On appeal, the Whitakers raise a number of issues for our consideration. For clarity's sake, we have consolidated similar queries.

(1) Because of the Whitakers' reliance upon the incorrect information supplied by the Indiana Department of Insurance, was the granting of the summary judgments as to Dr. Tutunji and Associates contrary to law?

(2) Were they denied a fair trial because of the absence of Dr. Tutunji and Associates from the trial?

(3) Were the Whitakers' constitutional rights violated by the application of the Indiana Medical Malpractice Act, IC 1971, 16–9.5–1–1 *et seq.* to their case?

(4) Did the trial court err in giving and in refusing to give certain instructions?

(5) Was the jury properly instructed as to the law applicable to the facts of the case?

(6) Did the trial court err by re-reading certain instructions to the jury?

(7) Did the trial court err by refusing to admit the hospital records?

We affirm.

I.

Jurisdiction

In the case at bar, the motion for summary judgment as to Dr. Tutunji was entered on November 17, 1978; the summary judgment as to Associates was granted on January 30, 1979. The jury verdict was rendered on March 29, 1979.

Because the trial court resolved the issues as to the various parties at different times, Dr. Tutunji and Associates question whether the judgments entered were "final judgments" from which an appeal may be taken. We note that this situation is not one in which a party seeks to appeal a ruling prior to the determination of all of the issues as to all of the parties. *See Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665, for a discussion of Ind.Rules of Procedure, Trial Rule 54(B) and TR. 56(C).

The summary judgments as to Dr. Tutunji and Associates disposed of less than all of the claims as to all of the parties. They were interlocutory in nature and not final for appeal purposes as they were not "certified" by the trial court for review. TR. 56(C); *Krueger, supra,* at 667.

With the rendering of the verdict as to St. Joseph's Hospital, there was a judgment which disposed of, with all finality,

the issues between each of the parties. There was nothing left for further determination. *Todd v. State* (1951), 229 Ind. 664, 101 N.E.2d 45, 56. The Whitakers' motion to correct errors encompassed the alleged errors involved in the granting of the earlier summary judgments as well as the alleged errors pertaining to the jury trial with the remaining defendant, St. Joseph's Hospital. Their appeal is properly framed and we conclude that the cause is before us.

## II.

### Summary Judgments

The Whitakers contend that because of their reliance upon the incorrect information supplied by the Indiana Department of Insurance, the granting of the summary judgments as to Dr. Tutunji and Associates was contrary to law.

At the time the Whitakers' cause of action arose, Dr. Tutunji and Associates were qualified as health care providers[1] under the provisions of the Indiana Medical Malpractice Act (Act), IC 1971, 16–9.5–1–1 *et seq.* As a result, the Whitakers were required by the Act to present their complaint to a medical review panel before they could commence an action in a state court. IC 1971, 16–9.5–9–2. They, however, failed to comply. The trial court granted the motions for summary judgments made by Dr. Tutunji and Associates accordingly.

The Whitakers' pivotal argument on appeal questions the impact of the incorrect information given by the Indiana Department of Insurance upon their non-compliance with the Act. In their "verified objection" to the motions for summary judgment, their attorney swore, under oath, that on October 24, 1977,[2] he had called the Department of Insurance in Indianapolis to check upon the status of Dr. Tutunji and Associates.[3] The attorney stated that he had been assured by that office that there was no record of premium payments[4] having been made by Dr. Tutunji or Associates. Relying upon the section of the Act which deals with health care providers who fail to qualify under the Act, IC 1971, 16–9.5–1–5, the Whitakers filed their action accordingly.

On appeal, the Whitakers urge that the granting of the summary judgments was improper because there was a genuine issue of material fact raised by the October 24, 1977 conversation. They contend that it is for the jury to decide the validity of this conversation and the weight to be assigned to it.

In making this contention, they rely solely upon their aforementioned "verified objection," which the trial court properly characterized as a TR. 56(C) affidavit in opposition to the motions for summary judgment. As such, it was subject to the requirements of TR. 56(E):

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him...."

The party seeking a summary judgment has the burden of establishing that there is no genuine issue as to any material facts and any doubt must be re-

1. The affidavits of Albert E. Cooper, Chief Deputy Commissioner of the Indiana Department of Insurance, stated that Dr. Tutunji and Associates were qualified as "health care providers" under the Act.

2. This date was approximately two weeks before the statute of limitations expired for this action under the Act.

3. On October 24, 1977, Dr. Tutunji and Associates were not yet parties. The complaint was not amended until October 31, 1977, when additional paragraphs charging them with medical malpractice were added.

4. *See* IC 1971, 16–9.5–2–1.

solved against the movant. *Ang v. Hospital Corp. of America* (1979), Ind.App., 395 N.E.2d 441. In determining whether to grant a motion for summary judgment, the court considers the facts set forth in the non-moving party's affidavits as true. *Ang, supra.* A court may properly grant a summary judgment only if no issue as to a material fact is raised. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

Affidavits which support and oppose motions for summary judgment must be made on personal knowledge. Additionally, they must affirmatively show that the affiant is competent to testify as to the matters covered as well as set forth facts as would be admissible in evidence. TR. 56(E); *Podgorny v. Great Central Insurance Co.* (1974), 160 Ind.App. 244, 311 N.E.2d 640, 648; *Renn v. Davidson's Southport Lumber Co., Inc.* (1973), 157 Ind.App. 446, 300 N.E.2d 682, 685.

The court, in the case at hand, struck the portion of the Whitakers' "verified objection" which indicated that the Department of Insurance had no record of premium payments having been made by Dr. Tutunji or Associates.[5] It properly concluded that the affiant was not competent to testify as to this hearsay evidence and, as a result, such evidence would be inadmissible at trial. While their attorney's statement may be used to indicate that he believed, in good faith, that Dr. Tutunji and

Associates were not qualified, it may not be used to indicate the truth of the matter asserted. *See Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, 673, for a detailed discussion of the hearsay rule in Indiana.

In light of the remaining assertions in the Whitakers' "verified objection," there was no competent evidence presented to establish that Dr. Tutunji and Associates were not qualified health care providers. In fact, insurance commissioner Cooper's affidavits, supporting the motions for summary judgment, indicated to the contrary.

We are constrained, as was the trial court, to view this "verified objection" in terms of a TR. 56(E) affidavit. As such, we conclude that there was no admissible evidence which would give rise to a genuine issue of material fact with regards to the qualifications or lack thereof of Dr. Tutunji and Associates under the Act. Dr. Tutunji and Associates have met their burden of establishing the non-existence of a genuine issue of a material fact. The Whitakers have failed to show otherwise.

The Whitakers next contend that Dr. Tutunji and Associates were not entitled to the summary judgments as a matter of law because of the mistake, surprise or excusable neglect on the part of the Indiana Department of Insurance. They filed a motion in this regard with the trial court. In its denial of their Motion for Relief from Summary Judgment, the court explained its reasoning:

5. The court explained its rationale in a Memorandum which accompanied the orders granting the summary judgments as to Dr. Tutunji and Associates:

"Included among those portions of that affidavit stricken was the hearsay allegation in paragraph (3) of the affidavit that the 'Department of Insurance . . . had no record of premium payments having been made by Nermin D. Tutunji, M. D. or by VanFleit, Tutunji, and Martinov, Associated with whom Dr. Tutunji was associated in the practice of medicine.' [Omission original].

\* \* \* \* \* \*

"The Cooper affidavit does, however, state that defendant Tutunji was qualified under the Act. The only assertion to the contrary is paragraph 3 of the 'verified objection', quoted above. However, paragraph 3 of the

'verified objection' cannot be deemed to contravene the statement of the Cooper affidavit; such use of the assertions made to the affiant of the 'verified objection' would constitute hearsay . . . There is no showing that the plaintiffs' affiant is or was competent to testify to hearsay evidence. Thus, while the 'verified objection' may be used to indicate that the plaintiff's attorney believed in good faith that Tutunji had not qualified under the Act, in that he had been so informed by the Department of Insurance, the 'verified objection' cannot be used to indicate the truth of the matters asserted by the Department, i. e., that Tutunji had not qualified . . . [T]he court cannot draw inferences from the defective assertions of the 'verified objection' without doing violence to Trial Rule 56(E)."

"This Court does not read Trial Rule 60 to provide that mistake or excusable neglect can create jurisdiction over a case where there is otherwise no jurisdiction. The Indiana Medical Malpractice Act, I.C. § 16–9.5–1–1 *et seq.* is jurisdictional. Summary judgment in favor of the moving defendants was granted, ultimately, on the grounds that those defendants were qualified under the Act, and the plaintiffs had not complied with the requirements of the Act, and thus the Court was without jurisdiction to entertain any claims against those defendants based upon allegations of medical malpractice.

"Regardless of any mistake or excusable neglect, the basic operative facts remain the same: the defendants were qualified under the Act; the plaintiffs have still not complied with the requirements of the Act. Thus, even if this Court were to set aside the summary judgments, jurisdiction over any claim based upon medical malpractice would still be absent."

◼ A motion under Ind.Rules of Procedure, TR. 60(B) is addressed to the equitable discretion of the trial court. The movant has the burden of affirmatively demonstrating that the relief is necessary and just. *Soft Water Utilities, Inc. v. LeFevre* (1973), 261 Ind. 260, 301 N.E.2d 745.

◼ On appeal, our review is limited to a determination of whether the trial court abused its discretion. *In Re Marriage of Jones* (1979), Ind.App., 389 N.E.2d 338, 341. We will reverse the trial court's denial of a TR. 60(B) motion only if there has been clear abuse of that discretion. *Fitzgerald v. Brown* (1976), 168 Ind.App. 586, 344 N.E.2d 309, 311. "An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deduc-

tions to be drawn therefrom." *In Re Marriage of Jones, supra,* at 341.

◼ In order for the Whitakers to have prevailed under TR. 60(B), equitable grounds must have been established by showing that they had had a meritorious defense. *Moe v. Koe* (1975), 165 Ind.App. 98, 330 N.E.2d 761, 764. They must have also demonstrated that the judgment entered against them was the result of surprise, mistake or excusable neglect through no fault of their own.[6] *Moe, supra;* 49 *C.J.S., Judgments,* § 280.

◼ After thoroughly reviewing the record, we are persuaded that the trial court did not abuse its discretion in denying the Whitakers' Motion for Relief from Summary Judgment. The setting aside of these judgments would have been a useless act. A court of equity will not require the doing of a vain or useless thing. *Cantwell v. Cantwell* (1957), 237 Ind. 168, 143 N.E.2d 275, 280. As the Supreme Court explained, "[T]here is nothing more useless or vain than the setting aside of a judgment although no defense to it exists." *Cantwell, supra,* 143 N.E.2d at 280. The statute of limitations had run on the Whitakers' cause of action and compliance with IC 1971, 16–9.5–3–1 would, therefore, have been impossible. There was no abuse of discretion here.

The Whitakers next argue that Dr. Tutunji and Associates should have been equitably estopped from their reliance upon IC 1971, 16–9.5–3–1 because of the incorrect information received from the Department of Insurance.

◼ The doctrine of equitable estoppel is called into play when a false representation of material fact is made with actual or constructive knowledge of the true state of the facts. The representation must be made to one who is without knowledge or the reasonable means of knowing the true facts with the intent that it will be relied

---

**6.** An analysis of those facts which have been held to constitute excusable neglect, mistake or surprise convince us that in order to set aside a judgment, the circumstances must not be the result of any fault or negligence on the part of

the movant. *See Continental Assurance Company v. Sickels* (1969), 145 Ind.App. 671, 252 N.E.2d 439, and cases cited therein. There is some evidence in the case at bar that, perhaps, the mistake was initially that of the Whitakers.

upon. The second party must then rely upon such representation to his or her detriment. *Kline v. Kramer* (1979), Ind.App., 386 N.E.2d 982, 987; *Hargis v. United Farm Bureau Mut. Ins. Co.* (1979), Ind.App., 388 N.E.2d 1175, 1179, fn.2. One moving for a summary judgment is entitled to a judgment as a matter of law if the opposing party fails to disclose a genuine issue of material fact which would invoke the theory of equitable estoppel. *Kline, supra*, at 988.

■ In the case at hand, we note that the information was given by a third party, an employee of the Department of Insurance who presumably believed the information to be correct. It was not given by Dr. Tutunji or Associates with the intent that the Whitakers rely upon it. The theory of equitable estoppel is inapplicable here. The trial court properly refused to invoke this doctrine.

### III.

### Fair Trial

■ The Whitakers next urge us to find that they were denied a fair trial against St. Joseph's Hospital because of the absence of Dr. Tutunji and Associates. Relying upon Ind.Rules of Procedure, TR. 19, they claim that the presence of Dr. Tutunji and Associates was needed in order to accord them "complete relief." We find this not to be the case and agree with the Court's analysis in *Indiana State Highway Com'n v. Clark* (1978), Ind.App., 371 N.E.2d 1323. There the Court rejected a very similar argument and refused to find prejudice in the granting of a judgment as to less than all the defendants. There is no error here.

### IV.

### Indiana Medical Malpractice Act

The Whitakers next raise a number of constitutional challenges to the Indiana Medical Malpractice Act, IC 1971, 16–9.5–1–1 *et seq.* Our Supreme Court in *Johnson v. St. Vincent Hospital, Inc.* (1980), Ind., 404 N.E.2d 585, recently upheld the constitutionality of this Act. In its well-reasoned

opinion, the Court set forth those factors to be considered in evaluating the constitutionality of a statute. It said:

"In considering these constitutional challenges, we accord this Act with every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality... Before a statute will be declared repugnant to the Constitutions its fatal constitutional defects must be clearly apparent... A statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies...." (Citations omitted.).

*Johnson, supra*, at 591.

■ Claiming that the Act is violative of their rights under the Fourteenth Amendment of the United States Constitution and Art. 1, § 12 of the Indiana Constitution, the Whitakers urge us to find that the Act has a "substantial chilling effect" on the exercise of their constitutionally protected rights. They contend that their rights to redress for injuries, access to the courts and trial by jury were violated by the Act's requirement of submission of a claim to the review board before commencement of an action. We cannot agree with this position. Such an argument was rejected by our Supreme Court in *Johnson, supra*, when it specifically upheld the constitutionality of the Act on this point.

■ The Whitakers next contend that the Act infringes upon their constitutionally protected rights because, at the time this action arose, there was no provision under the Act for the resolution of procedural disputes. Because of the incorrect information given by the Department of Insurance and their reliance upon it, they claim that they were "denied their day in court as to these defendants." They say that their due process rights were violated because the provisions of the Act "allowed these defendants to be removed from the case."

■ In making this claim, they fail to provide us with any supporting authority germane to the issue. As such, we will not

address their bald assertion of error. Failure to provide this Court with citations of supporting authority or a pertinent argument will result in a waiver of that issue. *Dominguez v. Gallmeyer* (1980), Ind.App., 402 N.E.2d 1295, 1298; *United Farm Bureau Family Life Ins. v. Fultz* (1978), Ind. App., 375 N.E.2d 601.

Relying upon that portion of Ind.Const. Art. 1, § 12 which states "Justice shall be administered ... speedily, and without delay," the Whitakers contend that the "quasi judicial procedure" established by the Act results in an extended delay before a case can be filed. This procedure was thoroughly analyzed by our Supreme Court in *Johnson* and was found to be constitutionally sound. *See Johnson, supra*, at 591–596, §§ A and B.

■ The Whitakers next charge that the Act is violative of the equal protection clause of the Fourteenth Amendment in that it creates an artificial, arbitrary and unreasonable legislative classification between persons subject to its provisions. A similar equal protection argument withstood constitutional challenge in *Johnson, supra*, at 596, 597. There, the classification in question involved malpractice tort claimants who were subjected to burdens not given to other tort claimants. The Supreme Court applied the "fair and substantial relation" standard and found the statute to be constitutional.

In the case at hand, the Whitakers point to the burdened class as being those persons who properly conform their actions to the Act, but who are given incorrect information by the Indiana Department of Insurance. We note that this classification was not, as charged by the Whitakers, arbitrarily established by the Act. It was, instead, created by the lack of diligence on their part or on the part of a state employee. There is no error here.

■ Charging that the Act is violative of Ind.Const. Art. 7, § 1 in that it constitutes an improper delegation of judicial power to the Indiana Department of Insurance, the Whitakers complain that the errors of the department improperly determined the jurisdiction of the trial court.

Despite their assertions to the contrary, the legislature has not delegated judicial power to the Indiana Department of Insurance through the Act. Such power clearly resides with the courts. Neither the Indiana Department of Insurance nor the medical review panel makes an adjudication on the merits of a claim. Neither conducts a hearing or a trial and neither renders a decision or a judgment on the claims before it. The Department of Insurance is merely to advise those who inquire as to the status of the health care providers. The medical review panel is to conduct a rational inquiry into the source and extent of the patient's injury for the purpose of forming its expert medical opinion. *Johnson, supra*, at 596. These are not judicial functions.

■ The Whitakers next argue that the legislature, by virtue of its passage of the Act, has impermissibly encroached upon judicial authority in the determination of admissibility of evidence. This precise argument was addressed and rejected by the Court in *Johnson, supra*, at 598.

### V.

### Instructional Error

■ The Whitakers contend that the court erred in giving Defendant's Requested Instructions # 1, # 3, # 8 and # 12. Claiming that Instruction # 1:

"In this case St. Joseph's Hospital is not an insurer of the Plaintiff, Dorothy Whitaker. St. Joseph's Hospital has only the duty to Dorothy Whitaker to exercise that degree of care that would be exercised by same or similar hospitals in St. Joseph County or in similar communities under the same or similar circumstances."

was confusing, they insist that the use of the word "insurer" misled "the jury into the understanding that the issue is the lack of insurance on the part of defendant, a Catholic charitable hospital." While we agree with the general proposition that instructions should not be confusing or misleading, we are not persuaded by the Whitakers'

argument that Instruction # 1 was so flawed. Our reading of this instruction indicates that the issue of insurance or the lack of it was not to be considered by the jury.

The Whitakers also claim that this instruction was a "negative instruction" and, as such, its giving was error. Again, we cannot agree with their interpretation of the instruction-at-issue. The duty of the hospital was clearly set forth in an affirmative fashion; the "negative" portion of the instruction was merely a modifying clause.

It is next argued by the Whitakers that the court's giving of Instruction # 3 was not only repetitious on the issue of foreseeability, but it was argumentative as well. We cannot agree with this reading of the instruction. It is neutral in tone and when viewed with the other instructions given, Instruction # 3 was not prejudicially repetitious.

■ According to the Whitakers, Instruction # 8:

"If any of the nurses employed by St. Joseph's Hospital, in rendering care and treatment to the Plaintiff, Dorothy Whitaker, exercised that degree of care and skill which would be exercised by similar nurses in same or similar communities, under same or similar circumstances; and if, while exercising that degree of care and skill, made a mistake or error of diagnosis or a mistake or error of judgment, this would not constitute negligence on the part of such nurses while practicing their nursing profession."

was ambiguous, confusing and misleading. They contend that it said, in effect, that "if these nurses made a mistake—no matter how gross the error—it would not constitute negligence." Despite their assertion, such a reading of this instruction is totally unjustified. We cannot agree with their interpretation.

■ Finally, the Whitakers urge us to find that Instruction # 12:

"(In this case) the fact that the Plaintiff, Dorothy Whitaker, may have fallen or jumped from the window of her room at the time and place in question does not, in and of itself, create any inference of negligence on the part of the Defendant, St. Joseph's Hospital. These are matters of proof to be determined by the evidence and under the instructions of the Court which are given to you at this time." (Parentheses original)

was a "mere accident" instruction. They further contend that the instruction implies that "the negligence alleged by plaintiffs on the part of St. Joseph's Hospital is not to be inferred from the mere happening of her fall from the fourth floor of defendant Hospital's building." Again, we cannot agree with their interpretation of this instruction. It is not a "mere accident" instruction as set forth in *White v. Evansville American Legion Home Ass'n* (1965), 247 Ind. 69, 210 N.E.2d 845, 846.

## VI.

### Proper Instructions

The Whitakers next claim that the court failed "to inform the jury with respect to the law applicable to the facts of this particular case" and contend that it erred in refusing to give their tendered instructions # 1, # 3, # 4 and # 10. While arguing instructional error as it pertains to a hospital's duty to protect its patients, they state that it is the duty of the court "to instruct the jury as to the law applicable to the case, *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923." They also point out that a party is entitled to have an instruction based upon his own theory of the case if it is within the issues and if there is any evidence fairly tending to support it. *Indianapolis Horse Patrol, Inc. v. Ward* (1966), 247 Ind. 519, 217 N.E.2d 626.

■ We, of course, agree with these propositions of law. We cannot, however, evaluate the merit of their arguments without a record of the evidence which supports or fails to support the alleged instructional errors.

This Court could easily make a generalized statement as to a hospital's duty to its patients, but such a response would fail to

address the issues raised. In essence, the Whitakers ask if the jury was properly instructed as to "whether the defendant, St. Joseph's Hospital, had the duty to protect the plaintiff, Dorothy D. Whitaker, from the type of injury herein complained of." After referring in their brief to "such conditions [as] are known to defendant hospital" and to mental and physical disabilities similar to those of the plaintiff, they urge us to find that the instructions given were "incomplete under the facts and circumstances of this case."

■ Unfortunately, the Whitakers have not provided us with the necessary tools with which to make a review of the refused instructions possible. In order to ascertain whether the duty instructions given and those refused were proper, we need to be informed of the specific facts and circumstances of this case. On appeal, we have neither a record of the proceedings below nor a summary of the evidence to guide us in our evaluation of the alleged errors. We cannot review this type of alleged instructional error in a vacuum, but must look at the instructions as related to the evidence in context of the whole trial. Without a record or summary of the evidence, we are precluded from a consideration of whether the duty instructions given and those refused were proper "under the facts and circumstances of this case."

■ The Whitakers also claim that the court erred by instructing the jury as to the defendant's claim of contributory negligence and the incurrence of risk because there was no such evidence in the record. We are unable to address this alleged error without a record of the evidence presented at trial.

## VII.

### Repetitious Instructions

■ The Whitakers contend that "by repeating certain instructions the court unduly drew the jury's attention to the issues of law and fact contained in them, giving them undue prominence." They, however, neglected to set out the problematic instructions or the evidence supporting them. We will not consider this specification of error.

## VIII.

### Hospital Records

■ Finally, the Whitakers claim that the trial court erred when it refused to admit the hospital records. Before physical evidence may be offered into evidence, a proper foundation must be laid for its admission. *Stath v. Williams* (1977), Ind.App., 367 N.E.2d 1120. Whether sufficient foundation has been laid for the receipt of such physical evidence is a matter addressed to the trial court's discretion. This Court may only reverse upon a showing of an abuse of that discretion. *Smith v. Crouse-Hinds Co.* (1978), Ind.App., 373 N.E.2d 923.

■ In order for us to review for an abuse of the trial court's discretion, we need a record of the evidence at trial before us. Without it, we are unable to determine whether a sufficient foundation was laid for the admission of the hospital records and whether the trial court erred in their exclusion. We cannot address this issue.[7]

Finding no error, we affirm the judgment of the trial court.

Judgment affirmed.

7. It is elementary that either party to an appeal may make an application for a writ of certiorari to complete or correct a record in a pending appeal. *Stewart v. State* (1980), Ind., 402 N.E.2d 973. Even the Court could issue the writ of certiorari on its own motion if the circumstances were appropriate, but in this case, it is not appropriate. The Whitakers knew full well that the evidence as to the proceedings with St. Joseph's Hospital was not part of the record on appeal. The Hospital not only filed a Motion to Dismiss or Affirm which was based upon the missing parts of the rec-

ord, but it fully briefed these omission in its appellee's brief. After being confronted with these glaring omissions, the Whitakers, for some reason known only to them, chose not to make an application for a writ of certiorari. This blatant omission after the Hospital had so pointedly underscored it can only mean that the Whitakers were content with the record being considered on appeal. *See Deckard v. State* (1960), 240 Ind. 381, 166 N.E.2d 170; *Minor v. Condict* (1977), Ind.App., 360 N.E.2d 857.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in part and dissents in part with opinion.

HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

I concur in issues I, II, III, IV and V. I cannot agree with issues VI, VII and VIII. The majority refuses to consider these issues because the appellant failed to provide this Court with all of the proceedings at the trial court. Rules of Appellate Procedure 7.2(B) provides:

> "(B) Portion of the Record Sent to Court on Appeal. The appellant shall designate only those parts of the record to be transmitted to the court on appeal, in which event the other parts shall be retained in the trial court unless thereafter the court on appeal shall order, or any party shall request, the transmission of some or all the other parts of the record. *Parts which are not transmitted to the court on appeal shall nevertheless be a part of the record on appeal for all purposes.*"

This language is clear and unambiguous in that all parts of the record in the trial court are automatically a part of our records in this Court. The appellant "has a right to expect that the court will follow the Indiana Rules of Procedure with the same spirit and sense of responsibility as all members of the practicing bar are expected to follow the Indiana Rules of Procedure. If the failure to obey the clear, explicit dictates of the Indiana Rules of Procedure can be simply dismissed, then, the erosion of an orderly judicial system has begun. If the clear, explicit meaning of the Indiana Rules of Procedure can be re-written by judicial opinion to avoid the consequence of a violation, then, the shroud of confusion will prevent any meaningful, just, and predictable solution to those disputes which must be resolved in our courts. If the clearly mandatory language of the Indiana Rules of Procedure can be rendered a nullity by the judicial opinion of this Court, then, the labors and deliberations of the Rules Committee to draft and recommend rules as well as the efforts expended in the adoption of rules by the Indiana Supreme Court will become mere trumperies." Staton, J., dissenting opinion, *Otte v. Tessman* (1980), Ind.App., 412 N.E.2d 1223, at 1232. Therefore, I dissent and would issue a writ of certiorari for the part of the record felt necessary to determine this appeal.