Joni L. MANNING–DOW,
Appellant–Defendant,

v.

Natasha M. FOX, Appellee–Plaintiff.

No. 49A05–0204–CV–181.

Court of Appeals of Indiana.

March 13, 2003.

James F. Ludlow, Indianapolis, IN, Attorney for Appellant.

John D. Cochran, Jr., Indianapolis, IN, Attorney for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Joni L. Manning–Dow ("Dow") appeals the trial court's grant of a motion to set aside default judgment filed by Defendant–Appellant Natasha M. Fox ("Fox").

We affirm.

### ISSUE

Dow raises one issue for our review, which we restate as: Whether the trial court abused its discretion in determining that a default judgment against Fox should be set aside.

### FACTS AND PROCEDURAL HISTORY

On May 4, 1999, Thomas Stevens ("Stevens") turned his vehicle into the path of a vehicle driven by Fox. A collision between the two vehicles resulted, and Stevens' vehicle ended up hitting a vehicle occupied by Dow. An eyewitness noted that Fox was not at fault, and the police report did not ascribe any fault to her.

Both Fox and Stevens were insured by State Farm Mutual Automobile Insurance Company ("State Farm") at the time of the accident. As a result of the accident, Dow made a personal injury claim against Stevens. This claim was handled by Jennifer Blissit, as State Farm's representative for Stevens. Fox also made a personal injury claim against Stevens.

On December 8, 2000, Dow's counsel, James Ludlow, provided Blissit with a settlement demand letter. The letter informed State Farm that Dow would include both Stevens and Fox in any lawsuit, thus making it necessary for State Farm to hire separate counsel. Blissit responded to the demand letter with a settlement offer that Dow considered inadequate.

On December 22, 2000, Dow filed a complaint against Stevens and Fox. Service on Fox was achieved via certified mail on December 28, 2000.

On January 2, 2001, Fox called Blissit and informed her that she had received "papers" from Dow's counsel. Blissit told Fox to forward the papers to the claims representative that had been assigned to represent her.

On the same day, knowing that she was not at fault in the accident which caused Dow's injuries, Fox called Ludlow to ascertain why she had been named as a defendant. As a result of her discussion with Ludlow and her receipt of Ludlow's January 3, 2001 letter to Blissit, Fox concluded that she would "be dismissed from the

litigation and need take no further action." Appellant's App. at 119.

The January 3, 2001 letter was sent to Blissit with a copy of the complaint. In the letter, Ludlow indicated that Fox had been named as a defendant "for the reason that in my experience your company would likely name her as a non-party if she was not a defendant in my original complaint." Appellant's App. at 302. The letter further indicated that "if your company and Mr. Stevens will stipulate that Ms. Fox has no comparative fault for the occurrence of this accident, I am willing to dismiss her from this lawsuit with prejudice. Please contact me if this offer is of any interest to you." *Id.* Blissit did not respond to the letter.

On January 30, 2001, Ludlow filed a motion for default judgment against Fox. The trial court thereafter entered a default judgment, and after a hearing entered a final judgment of $84,292.00 against Fox.

On April 30, 2001, Fox received a letter from Ludlow informing her he had obtained the default judgment. The letter informed Fox that "my options as [Dow's] attorney seem to be two. One option would be to commence garnishing any income from your employer and/or proceed with the sale of personal assets until this judgment is satisfied." Appellant's App. at 121. The letter also offered to forgo any action against Fox if she would sign an attached document that assigned her rights to "any legal rights which you might have against State Farm for its failure to defend you in this claim." Appellant's App. at 122.

Fox responded to the letter by filing a motion to set aside the default judgment. The motion stated that she should be relieved from the entry of default judgment because of, *inter alia,* "mistake, surprise, or excusable neglect" under Indiana Trial Rule 60(B)(1). The motion also alleged

that Fox had a meritorious defense. The motion was initially denied, but upon reconsideration the trial court set aside the judgment. Dow now appeals.

## DISCUSSION AND DECISION

Dow contends that the trial court abused its discretion in setting aside the default judgment against Fox. Dow classifies this case as a "breakdown in communications" case, and she cites *Mason v. Ault,* 749 N.E.2d 1288, 1291–92 (Ind.Ct.App.2001), *trans. denied,* and related cases for the proposition that neglect is not excusable if the defaulted party or parties "did not do all that they were required to do." Dow also cites *Rogers v. Lockard,* 767 N.E.2d 982, 987 (Ind.Ct.App.2002) and *Whitaker v. St. Joseph's Hospital,* 415 N.E.2d 737, 744 n. 6 (Ind.Ct.App.1981) for the proposition that "circumstances must not be the result of any fault or negligence on the part of the movant." Dow emphasizes that Fox did not follow Blissit's advice to forward the complaint to a State Farm claims representative.

 Whether the facts and inferences of a particular case constitute excusable neglect is a determination generally left to the discretion of the trial court. *Lehnen v. State,* 693 N.E.2d 580, 581 (Ind.Ct.App. 1998), *trans. denied.* Our review of a trial court's decision on a motion for relief from judgment under T.R. 60(B) is limited to whether the trial court abused its discretion. *Id.* An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and inferences before the court. *Weppler v. Stansbury,* 694 N.E.2d 1173, 1176 (Ind.Ct. App.1998).

 In reviewing the decision to grant relief under T.R. 60(B), we will not reweigh the evidence or substitute our judgment for that of the trial court. *Pro-*

*fessional Laminate & Millwork, Inc. v. B & R Enterprises*, 651 N.E.2d 1153, 1157 (Ind.Ct.App.1995). There are no fixed standards to determine the parameters of mistake, surprise, or excusable neglect. *Id.* The trial court must balance the need for an orderly and efficient judicial system with the judicial preference for deciding disputes on the merits. *Id.* A trial court's decision to set aside a default judgment will be upheld upon "slight" evidence. *Kreczmer v. Allied Construction Co.*, 152 Ind.App. 665, 284 N.E.2d 869, 870 (1972). It is incumbent upon a party seeking to set aside a default judgment under T.R. 60(B)(1) to show (1) that the judgment was taken as a result of her mistake, surprise, or excusable neglect, and (2) that she has a meritorious defense to the cause of action.[1] *Id.*

Here, Fox acknowledges that she received service of process and that she did not act upon Blissit's suggestion that she forward the complaint to a State Farm representative. Fox states, however, that her failure to send the complaint to State Farm, as well as her subsequent failure to appear, was attributable to representations by Ludlow that misled Fox into believing that the claims against her would be dismissed and that she would not be required to defend.

Dow's reliance on *Mason* and related cases is misplaced. In *Mason*, the plaintiff contractor filed a complaint to foreclose a contractor's lien. The defendant homeowners received service of process, but they did not appear at the hearing. The trial court entered a default judgment, and the homeowners filed a T.R. 60(B) motion in which they alleged that they did not appear because their attorney had advised them before the complaint was filed that the complaint would set a definite date for their response. When they reviewed the

complaint and did not find a definite date, "they assumed that additional paperwork would be sent by the Court setting such a definite date for them to respond to [the contractor's] claim." *Mason*, 749 N.E.2d at 1291. The trial court set aside the default judgment.

On appeal, this court reviewed a number of cases pertaining to breakdowns in communications that resulted in default judgments. *Id.* at 1291. We noted that in the other cases, "the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in a failure to appear." *Id.* (quoting *Smith v. Johnston*, 711 N.E.2d 1259, 1262 (Ind. 1999)). We then reversed the trial court on the basis that the breakdown in communications under the *Mason* facts was not "excusable neglect" as that term is used in T.R. 60(B)(1). In so doing, we noted that "[a]fter [the homeowners] received the summons and complaint, they did not contact a lawyer or otherwise make any arrangements with respect to their defense." *Id.* at 1292.

■ As we held in *Mason*, the court's discretion in determining whether to set aside a default judgment pursuant to T.R. 60(B)(1) is broad "because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case." *Id.* at 1290. Neither *Mason* nor the related cases cited by Dow contain the fact pattern which constitutes the key component of this case, i.e. a defendant's reliance upon the representations of the plaintiff's attorney.

Dow's reliance on *Rogers* and *Whitaker* is also misplaced. In *Rogers*, we upheld the trial court's denial of the defendant's motion to set aside the default judgment

---

1. For purposes of this appeal, Dow concedes that Fox has a meritorious defense.

when the defendants failed to appear because they didn't bother to read the summons. It was in this context that we cited *Whitaker* for the proposition that a disputed judgment should not be set aside where the circumstances leading to the disputed judgment were "the result of any fault or negligence on the part of the movant." *Rogers*, 767 N.E.2d at 987 (citing *Whitaker*, 415 N.E.2d at 744 n. 6).

In *Whitaker*, the plaintiffs claimed that summary judgment for the defendant doctors in a medical malpractice action should have been set aside on T.R. 60(B)(1) grounds because the plaintiffs relied on what they claimed was inaccurate information from the Indiana Department of Insurance. Based upon this information, the plaintiffs failed to comply with certain procedural and jurisdictional provisions of the Indiana Medical Malpractice Act. A panel of this court noted that the trial court denied the plaintiffs' T.R. 60(B)(1) motion on the basis that the plaintiffs, even after ascertaining that they should have complied with the jurisdictional provisions of the Act, failed to do so. *Whitaker*, 415 N.E.2d at 744. The court then held that to overturn the grant of summary judgment would be a useless act, as the statute of limitations had already run. *Id.* In this context, the court noted that there was evidence that the plaintiffs' initial mistakes caused them to miss the jurisdictional deadlines mandated by the Act. *Id.*

The critical circumstances of the instant case were not present in either *Rogers* or *Whitaker*. Accordingly, the cases are inapposite. Furthermore, we observe that Dow is reading *Mason, Rogers, Whitaker*, and the related cases much too broadly. Dow's interpretation of the cases is based upon the mistaken notion that Indiana courts have taken a scalpel and excised the "mistake" and "excusable neglect" factors from T.R. 60(B).

Fox cites three cases that discuss the impact of a plaintiff's attorney's representations upon a defendant's claim of mistake or excusable neglect under T.R. 60(B). The first two cases, *Carvey v. Indiana National Bank*, 176 Ind.App. 152, 374 N.E.2d 1173 (1978) and *Condon v. Patel*, 459 N.E.2d 1205 (Ind.Ct.App.1984), differ from the instant case in that the plaintiff's attorney made intentional misrepresentations, but the cases are significant because they discuss the development of the law in this area. The third case, *Gallant Insurance Co. v. Toliver*, 695 N.E.2d 592 (Ind.Ct.App.1998), *trans. denied*, is factually similar to the instant case, and it forms the basis for our decision.

In *Carvey*, a default judgment was set aside because the plaintiff's attorneys misrepresented the purpose of the lawsuit. Carvey and the plaintiff's attorneys had settled a dispute between them before a suit was filed. However, several other parties were not amenable to settlement. Accordingly, the plaintiff's attorneys informed Carvey that they were going to file a suit in order to pursue the uncooperative parties. The plaintiff's attorneys also informed Carvey that he did not need to defend the matter. Carvey relied on the attorneys' representations. The attorneys, however, subsequently asked the trial court to default Carvey when he failed to appear. The trial court denied Carvey's motion to set aside the default judgment. This court reversed in light of the substantial amount of money involved ($44,084.25), the material issues of fact surrounding the possible release of one or more co-guarantors, the short length of the delay, and the misrepresentations by the plaintiff's attorneys. *Carvey*, 374 N.E.2d at 1180.

In *Condon*, the plaintiff's attorney misled an insurance representative as to the purpose of a lawsuit. Specifically, the at-

torney told the representative that he was filing the suit to protect the statute of limitation and that he would allow an indefinite extension of time to answer the suit. Later, the attorney asked the trial court to default the defendant insurance company. This court set aside the default because the insurance company reasonably relied on the representations of the opposing counsel. *Condon*, 459 N.E.2d at 1207.

In *Gallant*, Ludlow, the plaintiff's attorney, filed a complaint against the driver of a vehicle that had collided with the vehicle that the plaintiff was riding in. Thereafter, Ludlow contacted Gallant, the plaintiff's insurer and informed Gallant that he "commenced the suit against [the defendant driver] with the intent of subpoenaing him for a deposition" and that he would "then apprise you of what he states with reference to his automobile insurance." *Gallant*, 695 N.E.2d at 593. Ludlow subsequently filed a motion for default judgment against the defendant driver. The motion was granted and judgment was entered for $50,000.00. Gallant filed both a motion to intervene and a motion to set aside the judgment. The trial court granted the motion to intervene but denied the motion to set aside the judgment.

In reversing the trial court, this court noted that "it has long been the law in this state that '[w]here a plaintiff with uninsured motorist coverage sues an uninsured motorist without naming the insurer as a party, the insurer is allowed to intervene to protect its interests.'" *Id.* We then discussed *Carvey* and *Condon* and their emphasis upon the importance of reliable communication from attorneys. *Id.* at 594. We acknowledged that Ludlow's representation "[did] not constitute an express promise not to proceed with the case before speaking to Gallant." *Id* at 595. We held, however, that "the clear implication of the representation is that nothing was

going to happen with respect to Gallant until Ludlow took the deposition of [the defendant driver]." *Id.* We further held that Gallant "need not establish that Ludlow intentionally misled it, only that it was justified in assuming nothing was going to happen in the case until further notice by Ludlow." *Id.* We concluded that Gallant's reliance on Ludlow's representation was reasonable and that Gallant had shown excusable neglect. *Id.* Judge Barteau dissented on the basis that Gallant, "a presumably sophisticated litigant," had notice of the lawsuit but declined to protect its interests until after a judgment had been entered. *Id.* at 596.

In the present case, Fox, a person not alleged to be a sophisticated litigant, received a complaint alleging that Stevens caused a collision with Fox's vehicle when he "failed to yield the right of way to [Fox]." Appellant's App. at 18. The complaint further alleges that Stevens' vehicle then struck Dow's vehicle. On the basis of these facts, the complaint alleges a negligence action against Fox. Fox, understandably perplexed by the leap from the recitation of Stevens' negligent act to her unexplained negligence, called Blissit, an employee of Fox's insurer but the assigned representative of Stevens. Blissit advised her to send the complaint to another representative, advice that Fox did not take. Instead, Fox called Ludlow to ascertain his purpose in including her as a party. Ludlow undoubtedly explained his reasons, reasons that Fox took as an assurance that she would be dismissed from the case. Fox then received a copy of the January 3, 2001 letter, which memorialized Ludlow's statement that he had not named Fox as a defendant because of her negligence but because of his belief that State Farm would name her as a party defendant. The letter further memorialized Ludlow's offer of stipulation that Fox was not at fault.

Under these circumstances, we cannot say that the trial court abused its discretion in setting aside the default judgment. We conclude that the trial court could have reasonably determined that under these circumstances, Fox could have been misled into believing that there was no need to defend against an apparently frivolous suit. We further conclude that the trial court could have reasonably determined under these circumstances that Fox's neglect in not following Blissit's advice was reasonable.

## CONCLUSION

The trial court did not abuse its discretion in setting aside the default judgment. Therefore, we affirm.

RILEY, J., and BARNES, J., concur.